MYRTLE KECK, RESPONDENT, v. AMERICAN FIRE INSURANCE COMPANY, APPELLANT.—167 S. W. (2d) 664.

Kansas City Court of Appeals. November 2, 1942.

*Randolph & Randolph* for respondent.

*Landis & Landis* for appellant.

SHAIN, P. J.—This is an action on an insurance policy, issued by defendant, insuring plaintiff's 1940 automobile against damage, due to collision.

It appears that plaintiff's said automobile was injured in a collision with another car at a time when plaintiff's car was being driven by her daughter, who, at the time, was a minor, to-wit: about sixteen years of age, and driving without a license.

There is but one question to be determined in this appeal. To an understanding of the question involved, suffice it to say that the contract of insurance specifically excluded any obligation on the defendant company while the automobile was being driven "by any person in violation of any State, federal or provisional law as to age applicable to such person or to his occupation, or by any person under the age of fourteen years."

The defendant interposed the defense that at the time of the collision causing the damage, the car was being driven by plaintiff's daughter, who was without license, shortly before her sixteenth birthday.

There appears to be no controversy as to the fact that the daughter who was driving the car had no State license, and that in the driving of the car at the time was violating the State law. In other words, it must be concluded from the facts and admissions of the record that the contract of insurance clearly excluded any coverage for any damage occurring as the evidence and admissions clearly show said damage was occasioned.

The contention of plaintiff is clearly expressed in reply filed to defendant's answer as follows, to-wit:

"Comes now the plaintiff above mentioned, and for reply to the answer of defendant in this cause, shows to the Court that following the collision and consequent damage to the automobile of plaintiff, as mentioned in plaintiff's petition, plaintiff called one, Clive Reagan, the Insurance Agent who issued the policy of insurance in question to plaintiff, and notified said agent of the said collision and damage to plaintiff's automobile.

"That after said collision, plaintiff's automobile was taken to the Schmidt Carriage Works in the City of St. Joseph, Missouri, and plaintiff thereupon went to said Schmidt Carriage Works to look about her said automobile, and while plaintiff was there one, Price Shoemaker, an attorney and adjuster for the defendant, then and there acting as the agent and servant of the defendant, came to said Schmidt Carriage Works and did then and there inquire of plaintiff who was driving her said automobile at the time of the collision. Plaintiff thereupon told said adjuster that it was her daughter, whereupon said adjuster inquired as to her age, and plaintiff thereupon informed said

adjuster that her daughter was fifteen years of age, and the said adjuster then and there knowing the age of plaintiff's daughter at the time she was driving plaintiff's automobile, did then and there direct said Schmidt Carriage Works to order the necessary parts and to proceed to make the necessary repairs to plaintiff's automobile.

"That by reason of the aforesaid action of the said adjuster for defendant, the defendant is now estopped to deny that its said policy of insurance does not cover the collision mentioned in plaintiff's petition, and by acting as aforesaid, the defendant has waived the provisions of its policy as to the age of plaintiff's daughter, who was driving said automobile at the time of the said collision, and by the said actions of defendant, defendant has assumed liability under its said policy for the damage done to plaintiff's automobile, as in plaintiff's petition alleged."

There was a trial by jury at the October, 1941, term of the Circuit Court of Buchanan County, and the jury returned a verdict for plaintiff assessing damage at $227.71. Judgment was in accordance with the jury verdict, and defendant duly appealed.

## OPINION.

We will continue to refer to the parties as plaintiff and defendant, in accordance with designation in the trial court.

The defendant makes but one assignment of error, to-wit:

"The Court erred in refusing defendant's instructions A, B and C in the nature of demurrers to the evidence for the reason that under the policy sued on, plaintiff was not insured against loss from this collision; and under the admitted facts and conceding plaintiff's evidence as true she suffered no damage on which to base an estoppel, and the defendant received no consideration on which to base a waiver, and that therefore the plaintiff as a matter of law was not entitled to recover."

The defendant, under points and authorities, treats its specific assignment under subheads, more specifically disclosing its contention as to questions of estoppel and waiver.

It is clear from the record that the case was tried on the theory that if the express terms of the contract were conclusive, that no liability existed. It follows that the question is as to whether or not estoppel or waiver or both had application, and, if so, does the testimony present an issue of fact for the jury?

Whatever agreement was had, if any, was had with Mr. Shoemaker who is alleged by plaintiff to be attorney and adjuster, acting as the agent of defendant. We have carefully examined defendant's assignments of error and points and authorities and nowhere does defendant urge any of its points on any claim that said Shoemaker was not acting as the agent of defendant.

Defendant, in its point two, makes claim in the following language:

, "The plaintiff cannot recover on a theory of a waiver on the part of the defendant by virtue of the agreement alleged to have been made by Mr. Shoemaker because:"

Following "because" the following abstract propositions of law appear:

"a. A Waiver does not create a new cause of action where none existed.

"b. Ordinarily a waiver is applied for the purpose of defeating a forfeiture, in which case there need be no consideration to support it.

"c. But in the case of the alleged waiver a substantial right as is claimed in this case, such a waiver must be supported by a valuable consideration."

These abstract announcements are followed by citations of authority.

Assuming assertions a, b and c to be correct, it does not follow that plaintiff is necessarily suing on a new cause of action, attempting to defeat a forfeiture, or that her claim is not supported by a valuable consideration.

Defendant, under its point three, uses the same language as in point two, except the word estoppel is used instead of the word waiver. Thereafter follows a, b and c:

"a. An estoppel does not create a new cause of action, but merely protects rights previously acquired.

"b. An estoppel is not applied to work a gain to a party but only to protect such party from a loss.

"c. The plaintiff suffered no damage and an estoppel does not operate unless a party has been induced to act to his injury."

All of the above is supported by citations of authorities. Again, assuming all to be correct, it does not necessarily follow that plaintiff asserts a new cause of action, is seeking to work unto herself a gain or that she has not been induced to act to her injury.

Defendant's fourth and last point is as follows:

"After the collision loss had occurred, the rights of the parties under the contract of insurance were fixed. Thereafter the alleged conversations and acts of Mr. Shoemaker caused plaintiff no damage on which to base estoppel and were supported by no consideration to defendant on which to base a waiver."

Again defendant cites authority in support.

Conceding that every abstract statement presented be true, it does not follow as a logical conclusion, from the statements alone, that waiver or estoppel is not involved herein.

The defendant was within its rights in restricting its coverage in the contract of insurance herein involved. The condition as to coverage, *supra*, constituted a promissory warranty, subsequent on the part of the assured that avoids policy unless there be a waiver or estoppel. [A. L. R., Vol. 95, l. c. 151, and cases cited therein.]

The expression, waiver, has various meanings dependent upon the context. In the case now before us for review, we are presented with a situation wherein under the contract of insurance the legal right under the contract excludes defendant from liability. As applied to such a situation, in order to constitute a waiver, there must be shown that there was a voluntary and intentional relinquishment or abandonment by the defendant of the known existing legal right it has under the terms of the contract. [67 C. J., l. c. 289.]

The word estoppel is more susceptible of a general definition than is the word waiver.

In Corpus Juris Secundum, Vol. 31, l. c. 191, estoppel is defined as follows:

"In the broad sense of the term, 'estoppel' is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or by representations, express or implied, *in pais*."

To determine as to whether waiver or estoppel has application in the case at bar requires a review and a consideration of the facts and circumstances shown in evidence.

Our duty, in examination and consideration of evidence, due to fact of verdict and judgment for plaintiff, is to give to plaintiff the benefit of the most favorable inference of all substantial evidence.

The evidence discloses that after the collision the minor daughter of plaintiff, who was in charge and driving the car, called a man by the name of Hines and had him take the car to Schmidt Carriage Works, with which the plaintiff had been doing business.

Pertinent to the issues involved, the following questions and answers appear in the testimony of plaintiff, to-wit:

"Q. Did you go to the Schmidt Carriage Works to see the automobile? A. Yes, sir.

"Q. When was that with reference to the time the collision occurred? A. Well, just after they towed it in.

"Q. When you heard about the collision did you call the agent of the company and report it? A. Yes, I did. I called—I can't recall whether I called Mr. Reagan, the man who sold me the insurance, or whether I called Mr. Shoemaker, but I called one of them and told him I had a wreck and told him the car was down at Schmidt Carriage Works and he better go down and look at it.

"Q. The agent who wrote the policy was Clive Reagan? A. That's right.

"Q. And you called either he or Mr. Shoemaker? A. One of them. I can't recall which, I was kinda excited about it.

"Q. While you were at the Schmidt Carriage Works did anybody come in there from the company and talk to you about it?

"A. Mr. Shoemaker came in and we looked at the car, just looked it over, it was bent bad, I didn't go into detail, I saw the automobile

was pretty well messed up. So I never asked Mr. Shoemaker anything about what it would cost or about the insurance or anything. Mr. Shoemaker and Mr. Schmidt were talking and while they were talking, why I just stood there and waited for them to finish their conversation. So when they came over—they was over just a little to the side, then they both came over and we stood there. So Mr. Shoemaker asked how old my daughter was. He said, 'Sixteen?' and I said, 'No, Mr. Shoemaker, she isn't sixteen.' So then I said, 'Well, what'll we do about it? I got to go on to town, it was noon.' So Mr. Shoemaker doesn't say a whole lot at no time, so he said, 'Well, Ernie, you just might as well go ahead and order the parts' and left and didn't fill anything out at no time.

"Q. Did Mr. Schmidt repair the car? A. Yes, he repaired the car."

Thereafter the following appears:

"Q. Then after you had told him that, is that when he told—you said 'Ernie?' A. Mr. Schmidt.

"Q. He's the manager of the company? A. That's right.

"Q. He told him to go ahead and order the parts to fix the car? A. That's right. (Italics ours.)

"Q. That all occurred there within just a few minutes time? A. Yes, sir.

"Q. At the Schmidt Carriage Works? A. That's right."

There is no evidence in the record to the effect that plaintiff herself ordered any parts for repair or made any order for repairing the automobile.

Ernest D. Schmidt of the Carriage Works, called on behalf of plaintiff, testified that he repaired the plaintiff's automobile and as to the reasonable value of services.

In the course of Schmidt's direct examination, the following questions and answers appear:

"Q. Do you recall Mr. Shoemaker coming there right after the collision, after the car was brought in? A. Mr. Shoemaker was there after the car was brought in.

"Q. Talking to you about the repairs on the car? A. Yes, we talked about it.

"Q. Did you overhear any conversation between Mr. Shoemaker and Mrs. Keck there at that time? A. No, sir."

Mr. Schmidt was not cross-examined.

Mr. Shoemaker was the only witness called on behalf of defendant. Shoemaker's testimony was contradictory to that of plaintiff. Commenting upon the conversation with Mr. Schmidt, presumably at a time when plaintiff was present, the following appears:

"A. I told Mr. Schmidt as far as I was concerned, I had no objection to him ordering the parts; regardless of who paid for it, that is the insurance company or Mrs. Keck, the parts had to be ordered.

In other words, there was no reason to delay the repairs just waiting on me.''

Plaintiff was called in rebuttal and contradicted as to all material matters testified to by Mr. Shoemaker.

There is nothing in the record that contradicts that Mr. Shoemaker was the agent of defendant and there are facts and circumstances in evidence from which it can be reasonably inferred that Shoemaker was acting in the matter as agent for defendant.

Touching matters occurring after the car was repaired, the plaintiff testified as follows:

''Q. What you thought you had coming?

''A. Well, when Mr. Schmidt called me, then I went to Mr. Shoemaker's office I said, 'Mr. Shoemaker, have you heard anything about the money?' I says, 'Mr. Schmidt wants his money.' And he said, ''Well, I've got correspondence going back and forth.' and he said he didn't have any answer for me. So it had been quite a long time then. So just suddenly something came to me, perhaps maybe—well, anyway, I said, 'Mr. Shoemaker, there isn't any doubt of me getting the money?' And Mr. Shoemaker says, 'You don't need to worry.'

''Q. That was in the summer? A. That was a long time afterwards.

''Q. Did you have another conversation later on where he told you the company refused to pay it? A. That's right.''

In the case at bar we are confronted with a situation that happened after the damage. In other words, at the time of the collision and injury the legal status of the parties was definitely fixed by the terms of the contract and, as so fixed, there was no liability upon defendant. It follows that if liability existed at the time of the trial, it must be by some act or conduct on the part of the defendant which happened after the time when damage occurred and the legal status under the contract became fixed. The general rule is that waiver, to be available, must be supported by consideration unless the elements of equitable estoppel appear.

In discussing in the conjunctive, ''Waiver and Estoppel,'' the Supreme Court in an opinion, Doerr v. National Fire Ins. Co., 315 Mo. 266, l. c. 275, after calling attention to the difference in situation before loss and after loss, and in discussing application of waiver and estoppel after loss has occurred, states as follows:

''Therefore it would seem to be the logical result of this situation, not only that mere silence or non-action on the part of the company will not affect its rights, but that any direct act in the nature of waiver, any promise to pay, after knowledge of the breach, must be based on good consideration, or else the elements of a technical estoppel must be present; that is, the company, by its conduct, must have put the insurer to some *disadvantage*, or cause him some expense, before it can be made liable. This in itself would be consideration

enough to support an implied promise to pay. We think the conclusion there stated cannot be avoided.'' (Italics ours.)

As to the question of consideration, the defendant at the close of all of the evidence offered an instruction, in nature of demurrer, wherein it asked the court to declare as a matter of law that there is shown no evidence of consideration upon which to base a waiver. The court refused the instruction. Defendant is shown to have objected and excepted to the ruling. Defendant makes a general assignment of error based upon refusal to give its instructions in nature of demurrers and assigns as reason the assertion that plaintiff suffered no damage to base an estoppel and that defendant received no consideration. By an examination of the record we find that the issue was presented to the jury by two main instructions, to-wit, instruction No. 1 on part of plaintiff, submitting issue as to waiver, and a counter-instruction as to such issue by the defendant.

The defendant offered no instruction submitting the issue of fact as of no damage or failure of consideration.

However, we conclude that the defendant by its offered instruction did, in effect, raise an issue as to whether or not there is any evidence showing that the plaintiff was shown to have been put to any disadvantage or expense other than what would have occurred if the defendant's agent had not ordered the parts to fix the car.

The plaintiff was present when parts were ordered. We conclude that it can be reasonably inferred from the evidence that she desired the parts to be had and desired that her car be fixed. It appears from the evidence that her car was properly supplied with parts and a satisfactory job of repairing was done.

We conclude that a duty rests upon the plaintiff to show that she was placed to some disadvantage or was caused some expense that she would not otherwise have suffered but by reason of the act of defendant.

We have carefully searched the record and find no substantial evidence of disadvantage or expense that can be concluded to be consideration for a waiver under the situation shown herein.

The judgment is reversed and, in conformity to practice in Missouri, the cause is remanded so that plaintiff may have opportunity to supply evidence of estoppel or of consideration for waiver, if any there be.

All concur.