**Bessie KIND, Respondent,**

v.

**Bill STATON and C. L. Mallett, Appellants.**

**No. 24415.**

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1966.

McMath, Leatherman, Woods & Young-
dahl, James E. Youngdahl, Little Rock,
Ark., Krings, Stewart, Whipple, Mauer &

Eisler, C. David Whipple, Kansas City, for appellants.

Allan R. Browne, Ennis, Browne & Martin, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is an action by Bessie Kind, widow and beneficiary of Jackson Kind, deceased, on a $3,000 Death Benefit Certificate issued by Local 31, U.A.W., AFL–CIO, a labor union group made up entirely of employees of the Buick-Oldsmobile-Pontiac Plant of General Motors and located in the Fairfax District, Kansas City, Kansas. The named defendant Bill Staton was Secretary and Treasurer of Local 31, and the named defendant C. L. Mallett was chairman of its Bargaining Committee. The total membership of Local 31 exceeded 3,000. It was impracticable to join such a number as defendants. Hence these two as representatives were named, and no objection has been expressed to such procedure. The real and responsible defendant is Local 31. Plaintiff sought to make collection out of the Special Fund which had accumulated in the Union Treasury through assessments levied under its Death Benefit Plan. After a trial resulting in a nine member favorable jury verdict, judgment was entered on June 2, 1965, for plaintiff in the sum of $3,345 ($3,000 under the Death Benefit and $345 as interest).

Defendants have appealed and assert: (1) their motion for a directed verdict should have been sustained and (2) Instructions Nos. 2 and 3 were erroneously given. It is plaintiff's contention that the defendant Union is estopped to assert forfeiture for failure to pay premiums, which were admittedly due. After some evidence had been received, plaintiff asked for and was granted leave to amend her petition by adding the following: "that defendants are estopped by silence and waived any objection to tardy payments on said plan".

Jackson Kind, the deceased insured, was first employed at the B.O.P. Plant in 1952. As an employee there he and all other employees were required to be members of the labor union identified as Local 31, U.A.W. CIO and International U.A.W. AFL–CIO.

Since September 15, 1951, Local 31 has had a Death Benefit program in effect. The plan was voluntarily created by the members of Local 31 (employees of B.O.P. Plant). This feature was a purely local enterprise and had no connection whatever with the parent or any other labor group. The Death Benefit was available to "all members in good standing" and provided for payment (to the insured member's named beneficiary or estate) of a Death Benefit amounting to $3,000 if death occurred while the member's coverage was kept in full force and effect by payment of the premium or assessment of $1.00 per month as required by the written By-Laws. These By-Laws had been adopted by the whole membership. Changes could be made only after 60 days' notice and then only if voted by two-thirds of the membership. Article II of the Death Benefit Plan provided that it "be financed and supported by a One Dollar ($1.00) per month increase in the regular dues of each member". So long as the member continued in active employment, this amount ($1.00), in addition to the union dues was "checked off" (deducted) from his pay check by the employer, General Motors, and by it remitted to the treasurer of Local 31.

Article VII of the Death Benefit Plan contemplated and provided procedures to be followed and obligations which would be incurred by employees whose services were terminated or interrupted. We set forth Article VII in full:

"The benefits provided by this plan are available to all members of the UAW–CIO, Local 31, who are in good standing in accordance with the requirements of said Local Union and the Constitution and By-Laws of the Interna-

tional Union, with the added provisions that:

"(a) Any member who is unemployed due to layoff or seasonable shut-down and who is eligible to be recalled, shall be required to pay the sum in effect at that time, not to exceed the amount of one dollar ($1.00) per month.

"(b) Any member who is absent from the plant on an approved leave of absence for any reason shall be required to pay the sum in effect at the time, not to exceed the amount of One Dollar ($1.00) per month.

"(c) Any member who retires under the UAW–CIO, G.M.C. Pension Plan may continue to participate in the benefits of this Plan by payment of the sum in effect at that time not to exceed the amount of One Dollar ($1.00) per month.

"*Any member eligible for the Death Benefit Plan must pay the said sum in effect at that time, not to exceed the amount of one dollar ($1.00) per month which shall be due between the first and fifteenth of each month to the Financial Secretary of the Local Union; otherwise, the said member will not be eligible or qualified to participate in the benefits of this plan until he is recalled, rehired, or returns to work, at which time his regular dues will again be automatically deducted from his salary*". (Italics ours).

Deceased's work card covering 1960 and through March of 1963 was in evidence. It shows that he was off work from February until August, 1961, and during that period did not pay any of the Death Benefit assessments. Of course, there was no "check off" or deduction of this item by the employer and could not have been since no money was earned, due or payable to him during the period. In accordance with the benefit plan provisions deductions were resumed, which resulted in reinstated coverage, when he returned to work. The work card shows further that Mr. Kind was not employed after March, 1963, and therefore there was not and could not have been any "check off" of the assessments due for May or June, 1963. According to the testimony, Mr. Kind stopped work because of illness. His condition was diagnosed as cancer, and he died on June 24, 1963.

It is undisputed that the assessments for May and June, 1963, which were payable on or before the 15th of each month were never actually paid. It is also conceded that the coverage here is what is usually described as term insurance—that is—there are no accumulated or extended values. Once default is made in payment of the premium there is a complete lapse and the insurance or benefit is no longer in effect. This is generally true and was here specifically provided for by Article IX of the Plan.

Plaintiff must and does seek to rely upon estoppel, namely, an estoppel against defendant Union to set up the defense of forfeiture, not because there is any question about defendants' right under its By-Laws and under the Plan, to forfeit Kind's certificate when he did not pay the May, 1963 premium or assessment by May 15, but because estoppel to do so arose on May 15, 1963, by reason of a telephone conversation which plaintiff says she had on that day with a girl or lady who answered the telephone at the office of Local 31. Mrs. Kind testified that: (1) some time prior to May 15, 1963, her husband asked her "to check the status of the Death Benefit Plan as to whether or not he was paid up and in good standing"; (2) early on the morning of May 15, she "looked up" the telephone number of Local Union 31, called that number and a lady answered. "I asked her if my husband was paid up on his dues and I want to know when I could pay, if there is any payment due on them—where to pay them" "She" (the girl who answered) "said that she would have to get in touch

with General Motors to see if they had taken it out of his check and she could call me back"; (3) no return call was made and that plaintiff on May 16, called once more and again a "lady's voice" answered. Plaintiff was told the "check off" had not been made and in response to her inquiry if "I could come in and pay it and she said, 'No'". "She said I couldn't, the 15th had passed".

Plaintiff also testified that in July, 1963, after her husband's death, she visited the Union office and talked with Mr. Bill Staton, Union Secretary and Treasurer, and a named defendant. She said that in this conversation she mentioned the telephone calls of May 15th and 16th. Mr. Staton testified that she did come to the Union offices and talked with him. He stated that he got out Mr. Kind's card, told her the insurance was lapsed and she said she knew the premiums were unpaid. Mr. Staton denied that she made any reference to or even mentioned any alleged telephone calls by her to his office during the month of May, 1963.

The defendant Union or Benefit Fund does not carry the status of the ordinary insurance company. It is a voluntary organization; only its own members are eligible for benefits, the fund is not operated for profit and the members are in reality both insureds and insurers. Biggs v. Modern Woodmen of America, 336 Mo. 879, 82 S.W.2d 898, 904. We are told by the opinion in John Hancock Mutual Life Ins. Co. v. Dawson, Mo.App., 278 S.W.2d 57, 61, that: "One who asserts an estoppel has the burden of establishing the facts on which it rests. 11 Mo.Dig., Estoppel, Key 116. Every fact essential to create it must be established by clear and satisfactory evidence".

The subject of estoppel generally is covered in 31 C.J.S. Estoppel, commencing on page 283 and continuing to page 794. Therein four kinds or methods by which estoppel may arise are discussed. The first three, estoppel by record, by deed, and by contract, are clearly not applicable to the case before us. Only the fourth, "Equitable Estoppel; Estoppel by Misrepresentation" is of possible application here. In defining that kind of estoppel we are told on page 367:

"Equitable estoppel is defined in many cases as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied on such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy; and the same definition is given estoppel in pais and estoppel by misrepresentation, * * *".

In discussing application of the doctrine we find the following declaration on pages 394, 395:

"As the doctrine, when applied, contravenes the technical, legal rights of the person estopped, stays the operation of the usual machinery employed to adjust the rights of men, and halts proceedings to make certain of justice, and hence is somewhat of a superlaw, arbitrary and penal in nature and character, it should be applied with great care and caution in each case, and only when all elements constituting an estoppel clearly appear".

In 45 C.J.S. Insurance § 673, pages 612 and 613, we find Waiver and Estoppel again distinguished in part and in these words:

"A waiver is the voluntary or intentional abandonment or relinquishment of a known right, an election not to take advantage of a technical defense in the nature of a forfeiture, whereas the essential elements of estoppel include the ignorance of the party who invokes the es-

toppel, misleading representations or conduct on the part of the company, and an innocent and deleterious change of position in reliance on such representations or conduct".

See also Keck v. American Fire Ins. Co., 237 Mo.App. 308, 167 S.W.2d 664.

We find no evidence in the case before us to indicate that the defendant Union or anyone for it voluntarily or intentionally waived payment or tried to waive payment of the premium due on May 15. In fact plaintiff in her brief (p. 9) says:

"However, the present question is not waiver (*intentional* relinquishment of a known right, Brandtjen & Kluge v. Hunter, 235 Mo.App. 909, 145 S.W.2d 1009, Spg.), but estoppel, as a shield against the defense of alleged nonpayment of premium".

In ruling as to whether or not plaintiff made a submissible case under estoppel and in determining if defendants were entitled to a directed verdict, we accept (because the jury did) Mrs. Kind's version of her telephone conversation with the lady at the Union office as completely correct. Was that conversation of May 15 sufficient in substance to give rise to equitable estoppel? First, was there any misrepresentation of any fact in the whole conversation? We believe there was no factual declaration of any kind pertinent to this controversy that was made in the conversation. The woman at Union headquarters merely offered to call General Motors. Second, was the insured, Mr. Kind, or the plaintiff, Mrs. Kind, ignorant or should they have been knowledgeable, as to whether or not the premium for May had been paid? They both knew or should have known that Mr. Kind had not worked since March and no wages were due him for April or May out of which this assessment could have been deducted. Mr. Kind at least knew, or was chargeable with knowledge, as to the contents of the By-Laws. McMahon v. Supreme Tent Knights of Macca-

bees, 151 Mo. 522, 52 S.W. 384; Kitzinger v. Journeymen Barbers I. Union, Mo.App., 103 S.W.2d 547, 550. His written designation of his wife as beneficiary contained this statement just above his signature: "I do hereby acknowledge that I have read the Death Benefit Plan and do agree to the provisions therein". It appears from Mrs. Kind's testimony that she, too, understood that the premium had to be paid on or before May 15. Third, did insured or plaintiff suffer an innocent or harmful change of position as a result of the telephone conversation? We think not. Their position was exactly the same afterwards as it had been before. Nothing had occurred which might reasonably have induced them to believe (a) that the premium was paid or (b) that an extension of time had been granted for its payment.

However, even though there was no waiver, nor factual misrepresentation and no change in position to the plaintiff, still if the girl at the office promised to call General Motors and "call plaintiff back" it was careless and negligent for her not to do so and we are told in 31 C.J.S., Estoppel § 102 page 519 that: "Negligence may give rise to an estoppel". However, continuing on the same page and in explanation as to when it may do so, we find this statement:

"A recognized proposition as to estoppel in pais is that if in the transaction itself which is in dispute a party has led another into the belief of a certain state of facts by conduct of culpable negligence calculated to have that result, and such culpable negligence has been the proximate cause of leading, and has led, the other to act by mistake on such belief to his prejudice, he cannot be heard afterward as against that other to show that the state of facts referred to did not exist".

In our opinion the negligence here, if any, does not amount to culpable negligence.

Plaintiff has invited our attention to numerous opinions which, it is claimed, justify

or at least authorize factually and legally a conclusion that our case presents a situation where defendants are estopped to assert the defense of nonpayment of premium. We examine some of those cases.

In Kitzinger v. Journeymen Barbers I. Union, supra, it was held first, that a member of a trade union was presumed to know the rules or by-laws and could not rely on an attempt by a subordinate officer to waive a requirement for prompt payment of assessment, but second, where the local union had long engaged in the practice of accepting premiums after the due date and the International Union had acquiesced without protest, it could not suddenly without warning or notice inflict the penalty of suspension. There is no evidence or even a suggestion in our case that any premiums were accepted after due date. Brandtjen & Kluge, Inc. v. Hunter, 235 Mo.App. 909, 145 S.W.2d 1009 is a replevin suit to recover some printing presses. It sheds no light on our matter. State on inf. of McKittrick ex rel. City of California v. Missouri Utilities Co., Mo.Sup., 96 S.W.2d 607, is offered as holding: "Mere silence is an act" of estoppel. The case is one in quo warranto for ouster of defendant utility from continuing to use certain streets. On page 615 of the opinion the court says:

"Indeed, there are cases where the mere silence of the estopped party and his failure to assert the right later claimed will be construed as a representation that he does not have the rights which he later attempts to assert".

This expression seems to be dicta, but in Liese et al. v. Sackbauer et al., Mo., 222 S.W.2d 84, we find an actual example. This was a suit to set aside a tax deed. Property admittedly worth $1500 was sold for taxes by the collector for $12.33, the amount of unpaid taxes. The collector accepted taxes from the original owners without informing them of the tax sale. His *silence* in this respect resulted in the doctrine of estoppel arising to prevent his later invoking the statute of limitations. The

collector's silence, we think, amounted to a willful and fraudulent misrepresentation. It is not fairly comparable to the case before us.

Our Supreme Court in Lange v. New York Life Ins. Co., 254 Mo. 488, 162 S.W. 589, ruled that where defendant's branch office cashier had authority to collect premiums, accept premium notes, and transact the company's business generally, his statement and representation to an insurance policy assignee that only $18.40 was necessary to pay a semiannual premium, he was authorized to bind the company and it was estopped to forfeit because such amount actually was insufficient. Smith v. Hartford Fire Ins. Co., Mo.App., 272 S.W. 700 is a case where the agent, in response to a request for an extension on premium installment, said: "You just let it go, and I will write into the company and see what they say about it". The court there held the company was estopped to forfeit for nonpayment of premium. These last two cases involve fire insurance companies.

We do not disagree with the opinions and conclusions expressed in any of the cases just reviewed but the facts in none of those cases can be said to fit the facts in our case, nor does the law as expressed in those cases provide a guiding precedent for our case. It is our opinion that the facts in the case before us did not give rise to estoppel and did not, as a matter of law, authorize submission of that issue to the jury.

■ There is an additional reason why the motion for a directed verdict should have been sustained. It is our opinion that the "lady in the Union office" had no authority by or *through promises,* under either the doctrine of waiver or of estoppel, to forgive payment of the May 15th premium or grant a time extension for its payment. The Death Benefit Plan or By-Laws provided unequivocally that any unemployed member must pay the monthly assessment by the 15th or the coverage terminated. There was no exception and no officer or employee was given discretion to vary or

modify this requirement. We are not here dealing with an insurance company, but with a voluntary union or fraternal group. All members are not only insureds but are also members of the insuring body. The group voted for and legislated the rules which could only be changed after 60 days' notice and by a two-thirds vote. Mr. Kind and all other members were charged with knowledge of those rules. Even if the "lady in the Union office" had precisely said to Mr. Kind or to Mrs. Kind: "We will waive payment of this May 15 premium because Mr. Kind is ill" or "We will extend time for payment until May 30 or until we learn whether his assessment was 'checked off'", we still believe the defendants or the Union would not be liable. Such representations, declarations or promises would have been above and beyond her authority. These employees had no authority through promises to waive payment of the premium, grant an extension or bind the Union to forego enforcement of the forfeiture provision for nonpayment of premium. Of course, had they advised that the premium *had been paid,* at a time when plaintiff was there for the purpose of paying, this would be a classic example of estoppel, misrepresentation of a fact, reliance thereon and all to the detriment of the claimant.

It follows as a result of the views expressed in this opinion that defendant's motion for a directed verdict should have been sustained. This being so, it is unnecessary to consider those assignments alleging error in the giving of Instructions Nos. 2 and 3.

The judgment for plaintiff is reversed and the cause remanded with directions to enter judgment for defendants.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.