CENTRAL STATES LIFE INSURANCE COMPANY, Appellant, v. NATHAN BLOOM and ETHEL BLOOM.—137 S. W. (2d) 517.

Division One, March 6, 1940.

*Jones, Hocker, Gladney & Grand* and *William Sellman* for appellant.

*Maurice Schechter* for respondents.

HYDE, C.—This is an action for the balance due on a note, computed to be $22,630.45 at date of trial. There was a verdict and judgment for defendants. Plaintiff has appealed and contends that defendants' evidence failed to prove any defense to the note.

In 1928, defendants executed a note for $25,000, secured by a first trust deed on real estate, due August 1, 1931. When the note came due defendants could not pay it. Defendant Nathan Bloom testified to facts, out of which defendants seek to make out an estoppel, as follows:

"I offered him (plaintiff's agent) title to the building . . . and they told me they wouldn't take the title, but they will try to sell the building, and the building was still worth $25,000.00 . . . He said they would not take the building, and I should remain in the building and they will collect the rent from the tenant, and in the meantime they will look for a tenant to buy the building. . . . He said, 'You keep the building, we'll take care of that; we'll try to get a buyer for the building, and then we'll let you off.' . . . They told me they would not take the building, I shall keep the building, but they will be the owners of the building, which they are anyhow by having the first mortgage, and they will try to get a customer for it."

The only tenant was the Globe Store and Office Fixture Company, a corporation, all of the capital stock of which was owned by defendants and their son. Bloom was president of this corporation and his son was secretary. According to Bloom, it paid rent of $25 per week. The interest on the note at 6 per cent was $1500 per year. Bloom also testified that the building was "in good shape" in August 1931; and that plaintiff made no repairs on it thereafter up to the date of foreclosure April 21, 1937. This suit was commenced several months before foreclosure. On September 11, 1934, defendants had executed a deed conveying the building to the Ethel Realty & Holding Company, a corporation owned by defendants. The purpose of this transfer was to get an RFC loan, "a government loan on the building," because plaintiff "wanted to get out their money." Plaintiff's agent assisted them in seeking such a loan but they failed to get it. Plaintiff bought the property at the foreclosure sale for $20,000. Bloom said that he did not pay all of the rental payments; that he did not know how much he did pay; and that he never asked for an accounting from plaintiff as to the application of the rent money on taxes and interest, or asked what was obtained at foreclosure. He said: "I was filled up with the property and wanted to get rid of it altogether. I couldn't hold it, and I thought whatever it is is all

right with me." However, at the time of the foreclosure sale, he had a notice of redemption served on plaintiff's. Defendants' evidence was that there was no agreement about the building; that all payments after 1931 were made to apply on the note, or other mortgage obligations, and ranged from $25 to $200, and that the total of all defendants' payments was much less than the amount necessary to repay plaintiff for advances for taxes.

Defendants' theory of estoppel, as pleaded and submitted to the jury was (1) that they relied on plaintiff's statements that the property was worth $25,000 in 1931, and that plaintiff would attempt to obtain a purchaser at such a price which would relieve defendants of their obligation; and (2) that they turned over control of the property to plaintiff and allowed it to collect the rent, and that plaintiff, during such control, negligently permitted the building to depreciate so that the property was not worth the amount of defendants' obligation. Even if this could be the basis of an estoppel, there is a total lack of evidence to prove the reasonable market value of the property in 1931 or at any time thereafter, or to prove its condition at the time of foreclosure, or to prove that it did depreciate in value, or to prove any negligence in making repairs, or to prove that any repairs were requested or needed, or to prove that plaintiff did not attempt to obtain a purchaser or to prove that there were any purchasers to be found at such a price or to prove that plaintiff bought it at the foreclosure sale for any less than its full value. Moreover, the statements, which defendants claim were made on behalf of plaintiff, amount to nothing more than an agreement to let defendants' corporation remain in the building and apply all payments (whether paid as rent or otherwise is immaterial in this situation) to defendant's mortgage obligation while an attempt was made to find a purchaser. In other words, on defendants' theory, they were granted a moratorium (accounting only for rent) so that an attempt could be made to sell the property for the amount of the debt. Defendants thereafter recognized their continuing obligation when they tried, with plaintiff's assistance, to get a government loan to refinance their debt. Certainly plaintiff did nothing inconsistent with the statements made and there is no indication that defendants were induced to do or failed to do anything, because of them, different from what they desired to do or would have attempted to do without them. Their contentions really amount to a claim that they were damaged by plaintiff's forebearance to immediately require all that it had a right to compel, upon default, under the contract between them. Defendants cite no case that ever held that such statements of forebearance and assistance could be the basis of an estoppel and we are sure there is none.

The basis of estoppel is "that a person is held to a representation made or a position assumed when otherwise inequitable con-

sequences would result to another who, having the right to do so under all the circumstances of the case, has in good faith, relied thereon;'' but that ordinarily ''mere expressions of opinion by interested persons cannot, although subsequently shown to be groundless or false, be regarded as misrepresentations for the purpose of creating an estoppel;'' and that ''the same thing is true of a promise or prediction concerning the future.'' [Biggs v. Modern Woodmen of America, 336 Mo. 879, 82 S. W. (2d) 898, and authorities cited; see also Waugh v. Williams, 342 Mo. 903, 119 S. W. (2d) 223; Rhoads v. Rhoads, 342 Mo. 934, 119 S. W. (2d) 247.] Certainly, under the circumstances shown (of plaintiff refusing to take the property for the mortgage), the statement as to value and the possibility of a future sale at that price was only an expression of an opinion (Bloom was a business man, corporation officer, and part owner of a real estate holding corporation) about which defendants had equal means of knowledge; and the promise to attempt to find a purchaser was clearly a promise concerning the future. Furthermore, defendants showed that they did not have much faith as to the value of the property, by seeking to persuade plaintiff to take it for the mortgage debt and plaintiff by refusing to take it therefor likewise indicated to them its lack of confidence in its value. Defendants also continued to deal with the property as though they had not been relieved of responsibility, by conveying it to their real estate holding corporation, by attempting to get a government loan, and by serving notice of redemption at the foreclosure sale. We hold that the facts shown by defendants' evidence were insufficient to constitute any defense to plaintiff's action, and that plaintiff was entitled to a peremptory instruction. [Home Trust Company v. Josephson, 339 Mo. 170, 186, 95 S. W. (2d) 1148.]

This court en Banc held in the Home Trust Company case, overruling former cases to the contrary, that when ''the ascertainment of the amount of interest is only a matter of mathematical calculation,'' then it is proper ''for the court to make the calculation and direct a verdict for the total amount due, including interest.'' There is no controversy here as to the amounts paid by defendants and they admit the execution of the note. When plaintiff's case is based upon a valid written contract and defendants' evidence wholly fails to show any defense thereto, this court, en Banc, has held that ''we should either enter judgment here, after reversing the judgment nisi, or remand the cause, with directions to the trial court to enter such judgment.'' [Knisely v. Leathe, 178 S. W. 453, 1. c. 461; see also Murdock v. Ganahl, 47 Mo. 135; Monmouth College v. Dockery, 241 Mo. 522, 145 S. W. 785; Downs v. Horton, 287 Mo. 414, 230 S. W. 103; Kristanik v. Chevrolet Motor Co., 335 Mo. 60, 70 S. W. (2d) 890; Sec. 1063, R. S. 1929, 2 Mo. Stat. Ann. 1361.]

The judgment is reversed and the cause remanded with directions

to enter judgment for plaintiff for the amount remaining due and unpaid, of the principal of the note sued on, together with interest as therein provided. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.