308

Fred B. SMITH and Faye L. Smith,
Plaintiffs-Appellants,

v.

James Eldon MITCHELL and Goldie M.
Mitchell, Defendants-Respondents.

No. 51002.

Supreme Court of Missouri,

Division No. 1.

Sept. 13, 1965.

Motion for Transfer to Court En Banc or for
Rehearing Denied Oct. 11, 1965.

H. Gregg Privette, Kansas City, Buford
L. Shankel, Overland Park, Kan., of coun-
sel, for appellants.

Joseph H. Glass, Kansas City, Cyrus Le-
land, Olathe, Kan., and Donald L. Dorei,
Kansas City, for respondents.

HENRY J. WESTHUES, Special Com-
missioner.

This action was filed in the Circuit Court
of Jackson County, Missouri, by plaintiffs
seeking a rescission of a contract with de-
fendants whereby plaintiffs agreed to con-
vey property in Jackson County, Missouri,
to the defendants and defendants agreed to
convey a motel in Olathe, Kansas, to plain-
tiffs.

The defendants filed a counterclaim asking for specific performance of the contract. After hearing the evidence, the trial court entered a decree in favor of the defendants. Plaintiffs appealed. Title to real estate is directly involved, thus appellate jurisdiction is vested in this Court.

The plaintiffs, Fred B. Smith and Faye L. Smith, are husband and wife. At the time the contract was executed, they lived in a house in Raytown, Jackson County, Missouri. We shall refer to them as the Smiths. The defendants, James Eldon Mitchell and Goldie M. Mitchell, are husband and wife. At the time the contract was signed, they lived in a motel in Olathe, Kansas. We shall refer to them as the Mitchells.

In the contract, the Smiths' property was valued at $22,000; the motel was valued at $90,000. The Smiths agreed to assume a mortgage on the motel and also to execute a note and second mortgage for the balance to make up the $90,000.

The Smiths, as grounds for rescission of the contract, claimed that the title to the motel was defective and that the Mitchells had misrepresented the income and the expense of operating the motel.

The most vital issue in this case is whether the Smiths were induced to sign the exchange contract by virtue of misrepresentations made by the Mitchells. Before making a statement of the evidence in detail, we shall dispose of a number of points raised in the brief filed on behalf of the Smiths.

█ Under point one of the brief, it is stated that this is a case in equity and "therefore triable de novo here." That is the correct rule except strictly speaking the case is *reviewed* de novo on the record made in the trial court. Plaintiffs cited and quoted from the case of Townsley v. Thielecke, Mo., 349 S.W.2d 902. The rule was considered at length in that case at pages 906, 907 (1) (2). While cases in equity are reviewed de novo, it is also the rule that where a decree is based upon conflicting evidence, an appellate court will usually defer to the findings of the trial judge who is in a better position to judge the credibility of the witnesses. 349 S.W.2d l. c. 906(2).

█ In the next point briefed, it is stated, "The Jackson County Circuit Court was without jurisdiction of the subject matter as it was not authorized to decree specific performance of the real estate located in Johnson County, Kansas, and its decree herein is absolutely void." It is our opinion that plaintiffs have misinterpreted the effect of the decree entered by the trial court. It must be noted that plaintiffs filed this suit thereby invoking the jurisdiction of the court for a rescission of the contract. Defendants filed a counterclaim asking for specific performance. It is a rule of law that when a court of equity acquires jurisdiction of a case, it may dispose of all issues therein involved. The decree in this case required plaintiffs to execute a deed conveying the Missouri property to the defendants and to execute a note and mortgage on the Kansas property to the defendants. It was decreed that when such deed and note and mortgage were deposited with the clerk of the court, then the clerk should deliver defendants' deed to the Kansas property to plaintiffs. According to the decree, the deed conveying the Kansas property to plaintiffs was in the possession of the clerk of the court. The decree further provided that in case plaintiffs refused to execute a deed conveying the Raytown property to defendants and refused to execute a note and mortgage on the motel the defendants should have judgment against the plaintiffs in the sum of $14,574.73 (the amount of the proposed note and mortgage). The decree further provided if and when the judgment was paid, then in that event, the decree should have the force and effect of a conveyance of the Missouri property to defendants and the clerk should deliver to plaintiffs a deed executed by defendants conveying the motel to plaintiffs. It is apparent that the court did not exceed its jurisdiction. The judgment or decree would upon certain events have the effect of conveying

the Missouri property. The decree operated in personam in relation to the Kansas property. Plaintiffs cite and quote from the case of March v. Gerstenschlager, Mo., 322 S.W.2d 743. The quotation from that case, set out in plaintiffs' brief, illustrates the difference between the judgment in the case before us and the one entered in the March case. Note a portion of the quotation: "The court found title to be in plaintiff in direct contravention of the deed in question, and ordered that the recorded judgment should operate as a conveyance if defendant failed to reconvey. Of necessity the recording would be in a different county." 322 S.W.2d 1. c. 744(2). In the March case, suit was filed in the City of St. Louis; the land was located in St. Francois County, Missouri. We rule the trial court possessed jurisdiction to enter the decree in question. See 81 C.J.S. Specific Performance § 115a(2), p. 649, and 81 C.J.S. Specific Performance § 135, p. 700.

■ Point three of the brief states that "The trial chancellor erred in refusing to grant rescission because the contract had become void by its terms." The assignment is a general statement and does not present any question for review. However, in the course of the argument, the plaintiffs stated, "The contract in question demanded defendants furnish merchantable title. To date, defendants have failed to do so." The main objection seemed to be that a personal injury suit was pending against the Mitchells which had been filed at the May 1961 Term of the Johnson County, Kansas, court. Olathe is located in that county. As explained in the evidence, if a judgment were entered during the May term, a lien on the property would date back to the day the suit was filed. The May term ended on September 2. Thereafter, no lien would attach if the motel had been conveyed or sold to another.

Mrs. Smith's testimony included the following:

"Q And you refused to go through with this deal because you didn't do any business at the motel, is that right?

"A That, and it had this lawsuit against it."

The contract in question was signed June 17, 1961. Possession of the motel was to be taken by the Smiths on July 1 and the Mitchells were to take possession of the Raytown property on that same day. However, possession was not taken by either party until July 8. The contract provided that the transfer of titles should be postponed until September 2, 1961, "if no judgment has been rendered against first parties in Suit No. 25852 in the District Court of Johnson County, Kansas." On September 2, the Mitchells were prepared to close the deal. However, Mr. Smith, present at the time, stated that his lawyer was out of town and Mrs. Smith was ill and that he would not close the deal unless they were present.

■ The evidence showed that to the day of trial no judgment had been entered in the personal injury action; further, Mr. Leland, a lawyer at Olathe, Kansas, testified that the defects mentioned by the Smiths' lawyer had been remedied; that a second mortgage had been released and the title to the motel was good, subject to a mortgage which the Smiths were to assume. Furthermore, the evidence showed that the Nicholson Title Company, Inc., had issued a title policy on the motel to the Smiths. The trial court was justified in finding that the title was good and the record contains no evidence to authorize a contrary finding.

The fourth point pertains to the question of whether plaintiffs were fraudulently misled as to the earnings of the motel. The evidence disclosed that the Smiths were interested in purchasing a motel. In April or May, they had begun negotiations to purchase a motel in Wichita, Kansas. Mr. Smith visited the motel and while there procured a C.P.A. report on its earnings. According to Mr. Smith, this report did not

disclose the earnings claimed by the owner of the motel so the deal was abandoned. In June, a Mr. Joe Bright, who was in the business of selling motels, approached the Smiths about purchasing the motel in question. The Mitchells desired to sell because Mr. Mitchell had been transferred to Ohio by the firm by which he was employed. It may be stated here that most of the dealings with reference to the sale of the motel were conducted by Bright and the Smiths. The Smiths visited the motel a number of times and the Mitchells inspected the house in Raytown. The contract of exchange was, as above stated, signed on June 17, 1961. Possession of the properties was taken on July 8. The Smiths retained possession of the motel until December 5, 1961, when they notified the Mitchells they were abandoning the motel.

There is much conflicting evidence as to what Bright and the Mitchells had stated with reference to the earnings of the motel as well as to the time the statements were made. The Smiths claimed that Bright and the Mitchells had promised to furnish proof of the claims as to the earnings and expenses. Much of this evidence by the Smiths was contradicted by Bright and the Mitchells. However, plaintiffs introduced a statement of earnings and expense which Mr. Bright evidently delivered to the Smiths before the contract was signed. In this statement, the income on the motel was stated to have been $17,029.50 for 1958; for 1959, $20,397.00; and for the first eight months of 1960, $15,006.00. The Smiths claimed that Bright and the Mitchells had stated that the earnings for 1960 had been about $23,000. If the business continued for the balance of the year in 1960, as it had been during the first eight months, the figure would be about $23,000. So, let us assume that the Smiths were told that the gross income on the motel for 1960 was about $23,000. The Smiths testified that they were promised proof of the income and expense of the motel which was never furnished. The Mitchells and Mr. Bright testified they gave to the Smiths all of the

information requested. It is contended that the sales tax report showed that the income for 1960 was much less than claimed. Mr. Mitchell filed an amended report to the State of Kansas in the fall of 1961. A letter from the tax department showed the Mitchells had paid a sales tax on $21,-109.00. Mr. Mitchell testified that in case a motel unit was rented for a certain length of time, no sales tax was due; that there were some units rented for the time required when no sales tax was paid. The Smiths also claimed that the federal income tax return showed the income on the motel was much less than $23,000 for the year 1960. Mr. Mitchell stated he intended to file an amended return; that Mrs. Mitchell often cleaned some of the motel units and the slips or records on those units were stored in a different place from those made out by employees when they cleaned units; that the employees were paid on the basis of each unit which they cleaned; that those records were erroneously used as a basis for the total income when, in fact, the rental on the units cleaned by Mrs. Mitchell should have been included.

It is also contended that the income on the motel after the Smiths took possession was some evidence that the gross income had been misrepresented. They testified that for the period the motel was operated by them, a little less than five months, the gross income was $7,019 and the total expense was $6,751. However, Mr. Smith admitted that of the $6,751 expense $3,607 represented payments on mortgages. Mrs. Smith, on direct examination, gave the following testimony:

"Q Mrs. Smith, why were you demanding the gross after you had been operating the motel for awhile?

"A Did you say 'why'?

"Q 'Why,' yes.

"A Because there was no business. Business was just dropping off something terrible."

On the basis of the above-given figures, the gross income for twelve months would have been about $16,000 or $17,000. Also, if business had dropped "off something terrible" it must have been much better before the motel was taken over by the Smiths. There is evidence in the record that the Smiths did to some extent examine the records of the motel before the contract was signed.

■ It is argued in the Smiths' brief that much of the Mitchells' evidence was impeached and contradictory. That same argument may be made with reference to some of the Smiths' evidence. It would serve no useful purpose to discuss this matter further. This is one of those cases wherein we must defer to the findings of the trial judge. Reviewing all of the evidence in this record, we are convinced that we should not reverse the decree of the trial court.

Under points five and six, plaintiffs contend that the trial court erred in entering a decree for specific performance because defendants did not prove their good faith; that the decree was against the weight of the credible evidence, punitive in nature, and lacked equity. What we have said with reference to the other points briefed renders unnecessary consideration of these last two assignments.

The judgment and decree of the trial court are hereby affirmed.

PER CURIAM.

The foregoing opinion by HENRY J. WESTHUES, Special Commissioner, is adopted as the opinion of the Court.

HYDE, P. J., and HOLMAN and HENLEY, JJ., concur.

DONNELLY, J., not participating because not a member of the Court when the cause was submitted.