PEERLESS SUPPLY COMPANY,
Plaintiff,

v.

INDUSTRIAL PLUMBING & HEATING COMPANY, Inc., et al., Defendants.

William G. HAVIN, d/b/a Havin Material Service, Defendant and Cross-Claimant, Respondent,

v.

ST. JOSEPH LEAD COMPANY,
Defendant, Appellant.

No. 54169.

Supreme Court of Missouri,
Division No. 1.

Oct. 21, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 14, 1970.

**654**

Randolph E. Puchta, Hermann, for respondent William G. Havin d/b/a Havin Material Service.

W. Oliver Rasch, Bonne Terre, John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellant St. Joseph Lead Co.

BRUCE NORMILE, Special Judge.

This is an equitable mechanic's lien action brought under the provisions of Secs. 429.270 through 429.340, V.A.M.S. (also see Civil Rules 101.11 through 101.19 V.A.M. R.). Of the original twenty-five parties to the suit only appellant St. Joseph Lead Company and respondent William G. Havin, d/b/a Havin Material Service are parties to this appeal.

Under a series of contracts, beginning in July 1963, Plez Lewis and Son, Inc., became the general contractor for the St. Joseph Lead Company for construction of surface structures and the mine collar for the Fletcher Mine project in Reynolds County, Missouri. The basic contract price exceeded $2,600,000.00. Under a purchase order issued by Plez Lewis dated August 7, 1963, respondent Havin furnished ready-mix concrete, gravel and similar materials to the general contractor, used by it in the construction of the surface buildings and collar.

On May 26, 1965, Havin filed a statement of his account in the circuit court showing charges of $246,168.90, credits of $193,583.75 and a balance due of $52,585.15. Thereafter on May 27, 1965, Havin filed a suit to enforce his mechanic's lien against Plez Lewis and Son, Inc., and St. Joseph Lead Company in the Circuit Court of Reynolds County, Missouri. The record on this appeal is silent on what service, if any, was obtained upon the defendants in that suit.

Thereafter on October 13, 1965, plaintiff Peerless Supply Company brought this equitable mechanic's lien action joining the general contractor on the Fletcher Mine project, Plez Lewis and Son, Inc., the owner of the mine, St. Joseph Lead Company, and twenty-two other lien claimants, including respondent William G. Havin. By its petition Peerless alleged that it had supplied materials for the project to the first named defendant Industrial Plumbing and Heating Company, Inc. The petition stated the various mechanic's liens against the real estate totaling in excess of $470,-000.00 and including the lien of respondent Havin in the amount of $52,585.15.

In the prayer for relief, plaintiff prayed judgment against Industrial Plumbing and Heating Company for its own account, with a mechanic's lien against the property and further prayed " * * * that the various rights and interests of the various Mechanic's Lien claimants and claimants of other liens on said real estate and buildings * * * and of the owner of said property be determined and enforced; * * * that all separate suits now brought or pending by any of the parties hereto be ordered

stayed * * * and none of such suits be further prosecuted, and that all of the rights of the parties under such suits be adjudicated and determined in this one equitable proceeding; * * * and for any and all other proper and equitable relief to which the plaintiff and all other parties herein may be entitled."

The proceedings in this case were necessarily complex. The record shows twenty-three trial court docket sheets with over one hundred ten entries. Answers were filed on behalf of many of the defendant lien claimants and answers and cross-bills were filed on behalf of other lien claimants. Various motions were filed on behalf of different parties. Certain summary judgments were granted. Argument was held on various other motions. Memoranda and briefs were filed by various parties. Ultimately, however, all claims excepting that of respondent Havin were dismissed with prejudice upon either stipulation or motion.

Trial was had on Havin's cross-petition on September 18, 1967. The statutory trustees of Plez Lewis and Son, Inc. (which had become a dissolved corporation) were in default. St. Joseph Lead Company appeared on that date and contested the issues. The case was taken under advisement. A default judgment was then entered against the trustees of Plez Lewis and Son, Inc., on July 17, 1968, (ten months after trial) in the amount of $50,707.58 with interest from and after March 5, 1965. The judgment also decreed a lien against the real property of the appellant, St. Joseph Lead Company.

St. Joseph Lead Company now appeals. It urges that Havin is barred by the six months statute of limitations for his failure and neglect to procure the issuance and service of an alias summons for Plez Lewis and Son, Inc., or its statutory trustees, after the filing on October 26, 1965, of a non est return on the original summons issued for Plez Lewis, and for the continuing failure to obtain service upon the statutory trustees until April 14, 1967. St. Joseph also urges that Havin is estopped to assert a lien against the property to the extent of $40,874.44, because St. Joseph Lead Company made payments to Plez Lewis in reliance upon certain letters from Havin to Plez Lewis indicating that the Havin account with Plez Lewis was "relatively current" at a time when it was in arrears in the amount of $40,874.44.

The proceedings, as they relate to respondent Havin, St. Joseph Lead Company, and Plez Lewis and Son, Inc., must be further detailed so as to allow an understanding of the issues involved on this appeal.

Upon the filing of the equity suit by Peerless, both Havin and St. Joseph Lead Company were duly served. However, the summons to Plez Lewis, issued on October 18, 1965, was returned with a non est endorsement on October 26, 1965.

On November 20, 1965, Havin filed his answer to the plaintiff's petition and his cross-bill against defendants Plez Lewis and Son, Inc., and St. Joseph Lead Company. In addition to other matters pleaded, Havin suggested that his lien was prior in time to all others and also suggested the filing of his separate suit on May 27, 1965. Havin prayed for judgment against defendant Plez Lewis and Son, Inc., for the debt due and asked that a lien might be adjudged against the property of St. Joseph Lead Company. The record on this appeal is silent as to any service of process on Havin's cross-claim on either Plez Lewis or St. Joseph. We assume there was none as to Plez Lewis. However, St. Joseph did respond by filing various motions directed against Havin's pleadings.

On December 9, 1965, St. Joseph filed a motion to quash service of and to dismiss Havin's cross-bill. On December 13, 1965, St. Joseph filed an answer to the petition of the plaintiff, Peerless Supply Company.

On January 15, 1966, the corporate charter of Plez Lewis and Son, Inc., was forfeited under the provisions of Sec. 351.525,

V.A.M.S., by the Secretary of State effective January 1, 1966, for failing to make its annual registration, filing its annual statements, anti-trust affidavits, etc., as required by statute.

On January 19, 1966, on application of Peerless Supply Company, an alias summons was issued for Plez Lewis and Son, Inc. On February 3, 1966, return was made upon the alias summons by the sheriff of St. Louis County, showing the service " * * * by delivering on the 28th day of January, 1966, a copy of the Summons and a copy of the Petition as furnished by the Clerk to Arthur Lewis, President; Registered Agent, of the within named Corporation, Plez Lewis & Son, Inc., a corporation."

On February 18, 1966, St. Joseph's motion to quash the service of Havin's cross-bill was taken up and submitted. The parties were allowed 45 days thereafter to file briefs. As will be seen, this motion was not ruled upon until almost seven months later. At the same time certain motions of Havin, including one to relieve him from serving itemized statement of the account, were taken up and overruled. (It might be noted that Havin's statements of account were composed of 63 legal size pages with single spaced itemization of deliveries.)

On July 30, 1966, upon leave of court, St. Joseph filed suggestions as to the forfeiture of the corporate charter of Plez Lewis and Son, on January 1, 1966, prior to service of the summons of January 19, 1966, and filed its motion to quash the alias summons and the alleged service and return thereof, on the grounds that the summons was illegal and void and conferred no jurisdiction upon the person of Plez Lewis and Son, Inc.

On August 11, 1966, defendant Industrial Plumbing and Heating Company, Inc., and Cass Bank and Trust Company filed their motion to substitute the directors and officers of Plez Lewis and Son, Inc., as of January 1, 1966, as statutory trustees for the dissolved corporation under Sec. 351.525, V.A.M.S. The complexities of this litigation are illuminated by the fact that, on August 24, 1966, only 13 days after filing of the above motion of Industrial, the suggestion was made to the court as to the forfeiture of the charter of Industrial Plumbing and Heating Company, Inc., also as of January 1, 1966.

On September 6, 1966, the motion of St. Joseph Lead Company to quash the service of and dismiss the cross-bill of Havin was overruled. St. Joseph was granted 20 days after the date the court ruled upon the pending motion to substitute parties defendant in lieu of Plez Lewis and Son, Inc., to file its answer to Havin's cross-bill. On that same date all pending motions were passed and reset for hearing on Friday, September 30, 1966.

On September 30, 1966, St. Joseph's motion to quash the alias summons for Plez Lewis and the service and return thereof was sustained. On that date the motion of Industrial Plumbing and Heating and Cass Bank and Trust Company to substitute the directors and officers of Plez Lewis and Son, Inc., as of the time of the forfeiture of the charter, as statutory trustee-defendants was sustained. Summons was ordered to issue and be served on said defendants. (However, the record does not show the issuance of these summonses or any returns on them.) A similar order was made for substitution of the statutory trustees for Industrial Plumbing and Heating Company as defendants.

On this same date of September 30, 1966, the plaintiff, Peerless Supply Company, was granted 30 days to prepare and file its amended petition to include the substituted defendants and all other defendants were granted 30 days thereafter in which to plead. St. Joseph was granted an additional 30 days time after the filing of any cross-claims to plead to them.

On October 25, 1966, plaintiff Peerless was granted 30 additional days in which to file additional pleadings. On November 5, 1966, the time for filing amended petitions and amended cross-claims was extended to

November 30, 1966. On November 28, 1966, plaintiff Peerless Supply Company dismissed its petition against St. Joseph Lead Company and the Industrial Plumbing and Heating Company with prejudice at the cost of defendant St. Joseph. On December 28, 1966, St. Joseph filed its motion to substitute parties in lieu of defendant Industrial Plumbing and Heating Company, alleging it to be a dissolved corporation by reason of the forfeiture of its charter as of January 1, 1966. On January 20, 1967, the court sustained this motion and ordered service on the statutory trustees, a majority of whom were also statutory trustees for Plez Lewis and Son, Inc.

On February 7, 1967, St. Joseph's motion for judgment on the pleadings as against Industrial Plumbing and Heating was taken up and sustained. On that same date respondent Havin was granted 30 days additional time to file an amended cross-claim. Defendant St. Joseph Lead Company was granted 30 days thereafter to plead to it. Upon application of Havin on this date alias summonses were ordered as to the officers and directors of Plez Lewis and Son, Inc., as they existed January 1, 1966, as trustees of Plez Lewis and Son, Inc. Although the record discloses this order for the issuance of the alias summonses, the record is silent as to whether, in fact, they were issued and as to whether there was any service upon them.

On March 3, 1967, Havin filed his first amended answer to the plaintiff's petition and his amended cross-bill against the last officers and directors of Plez Lewis and against St. Joseph Lead Company. Summons was issued and service was had on seven of the ten trustees between March 11, 1967, and March 18, 1967.

On March 28, 1967, the last remaining party other than Plez Lewis, St. Joseph and Havin filed its release and stipulation for dismissal. On March 31, 1967, St. Joseph filed its answer to Havin's first amended cross-bill, together with a motion to dismiss

Havin's cross-bill on the basis that it was barred by limitation for failure to properly obtain service on Plez Lewis, a necessary party. On April 14, 1967, additional summonses on Havin's cross-bill were issued for the trustees of Plez Lewis, a dissolved corporation. Subsequent returns on the summonses were made showing service obtained on all of the trustees beginning April 27, 1967, and ending May 9, 1967. On May 2, 1967, Havin was granted 20 days to file a responsive pleading to St. Joseph Lead Company's answer. On that same date the hearing on St. Joseph's motion to dismiss Havin's cross-bill was ordered deferred until time of trial. Several of the alleged trustees filed replies stating that they had not been officers or directors of Plez Lewis at the time of the forfeiture. One trustee filed a motion on June 20, 1967, to be stricken as a party, which was sustained by the court.

On June 30, 1967, St. Joseph amended its answer to the first amended cross-bill. On September 7, 1967, St. Joseph directed interrogatories to Havin which were answered on September 18, 1967. The trial of the cause was had on September 18, 1967. Following the hearing the matter was taken under advisement with Havin given 30 days and St. Joseph 30 days thereafter to file briefs. The judgment in favor of Havin was entered on July 17, 1968.

In this equitable case it is necessary to review both the law and the evidence, deferring to the trial court's finding on controverted factual matters. The judgment should be set aside only if it is clearly erroneous. Civil Rule 73.01(d), V.A. M.R., Craft v. Politte, Mo., 454 S.W.2d 534; Maas v. Dreckshage, Mo.App., 244 S.W.2d 397. The mechanic's lien law should be construed as favorably to mechanics and materialmen as its terms will permit. Mid-West Engineering & Construction Company v. Campagna, Mo., 421 S.W.2d 229, 233. As stated in State ex rel. Erbs v. Oliver (banc), 361 Mo. 836, 237 S.W.2d 128, 132, " * * * it has been the policy of our Legislature to construct our mechanics'

lien statutes upon broad principles of right and justice and this Court has construed them liberally to carry out their remedial purposes. * * *" That opinion also remarked as to "* * * the liberal purpose of this equitable action * * *." Specific statutory provisions relating to the equitable action will be further considered hereafter.

The first and major point raised by appellant St. Joseph Lead Company is that Havin's mechanic lien is barred by limitations under Sec. 429.170, V.A.M.S. Although Havin's answer and cross-bill were timely filed, Plez Lewis and Son, Inc., was not served with process prior to the forfeiture of its charter effective January 1, 1966. After that forfeiture Havin did not apply for alias summonses upon the statutory trustees until February 7, 1967.

Sec. 429.170, V.A.M.S., provides:

"All actions under sections 429.010 to 429.340 shall be commenced within six months after filing the lien, and prosecuted without unnecessary delay to final judgment; and no lien shall continue to exist, by virtue of the provisions of said sections, for more than six months after the lien shall be filed, unless within that time an action shall be instituted thereon, as herein prescribed."

Sec. 429.190, V.A.M.S. (Civil Rule 101.04, V.A.M.R.) provides that the parties to the contract "shall" be made parties to all such actions. Plez Lewis and Son, Inc., as the general contractor and party to the contract with Havin for materials, was a necessary party to this suit. Continental Electric Company v. Ebco, Inc., Mo., 375 S.W.2d 134; Hennis v. Tucker, Mo.App., 447 S.W.2d 580.

There is no question here but that the petition of plaintiff Peerless Supply Company and the cross-claim of respondent Havin were both filed within the limitations period. However, "'* * * the fact that the suit was commenced prior to the running of the statute is not necessarily decisive. The question with which we are here concerned is as to whether or not there was such delay in the issuance of other process following the return of the original writ as to interrupt the continuity of the suit so that the running of the statute became a bar to the suit.'" Continental Electric Company v. Ebco, Inc., supra, 375 S.W.2d l. c. 137; Mayne v. Jacob Michel Real Estate Company, 237 Mo.App. 952, 180 S.W.2d 809.

St. Joseph urges that the mere filing of the action or of the cross-claim within the period of limitations was not a sufficient compliance with the limitations requirements since there was an unnecessary and inexcusable delay of over one year in the prosecution of respondent's cross-claim, which is in bold contrast to the six months limitation period and the statutory injunction for prosecution without unnecessary delay.

In examining this issue we recognize that "* * * it is not possible to satisfactorily state even general standards by which it may be determined when and under what circumstances one's lack of diligence to proceed in the issuance of process may amount to a discontinuance of the action or destroy the effectiveness of the pending proceeding. Each situation must depend upon all the circumstances in which the relevant facts appear." Driscoll v. Konze, Mo., 322 S.W.2d 824, 829. Each case must be ruled on its own facts. Continental Electric Company v. Ebco, supra, 375 S.W.2d at 139; Emanuel v. Richards, Mo.App., 426 S.W.2d 716, 719.

In support of its position appellant cites a number of cases all of which are distinguishable in some degree on the facts or law involved.

Truog v. Elbel Construction Company, Mo.App., 374 S.W.2d 612, was a complex equitable mechanic's lien suit involving a number of parties. In that case one lien claimant had not originally been joined as a party, but on its application was later made a party defendant. More than six

months elapsed without further action by that claimant to answer or file a cross-claim to the equitable petition. The later dismissal of that party was affirmed on appeal since no action was commenced on its lien within six months after it was filed. The application to be made a party was held not to be a pleading or cross-claim sufficient to commence the action as to the cross-claim as required by Sec. 429.310, V.A.M.S. In this case respondent Havin did timely file his cross-claim which commenced this action against Plez Lewis and St. Joseph Lead Company. Respondent here had also filed its separate legal suit previous to the filing of the equitable mechanic's lien suit.

The case of Kinnear Manufacturing Company v. Myers, Mo.App., 452 S.W.2d 599, involved a somewhat similar problem. However, in the Kinnear case, service was never obtained on the general contractor, a necessary party, by either the plaintiff or the cross-claimant. This fact was fatal to the imposition of a lien.

More nearly in point is the case of Continental Electric Company v. Ebco, Inc., supra, where the lien claimant filed a *legal* mechanic's lien suit within the six months limitation period. However, on February 11, 1960, a non est return was made as to defendant Ebco, a necessary party. The plaintiff sought no further process until October 10, 1960, when the alias summons was issued. Service was obtained on October 14, 1960. The service was approximately three months after the expiration of the six months limitation period and eight months after the filing of the non est return. The trial court held that plaintiff's lien was barred by reason of the unnecessary delay in obtaining service of process on Ebco and this court affirmed. The opinion noted the obligation of the appellant to see that an alias summons was issued and found without question that the plaintiff had not diligently carried out this obligation. Under the circumstances discussed the court found that the delay in serving Ebco " * * *

must certainly have delayed the bringing of the cause to trial." 375 S.W.2d 1. c. 139.

Both Frank Dusselier Basement Builders, Inc. v. Gwico Builders, Inc., Mo.App., 449 S.W.2d 865, and Hennis v. Tucker, supra, were legal mechanic's lien actions with situations similar to Continental Electric Co. v. Ebco, supra, in that no justification or excuse was made for the delays exceeding the limitation period following non est returns.

Appellant's authorities do not apply to the instant case for several reasons. *First,* under the circumstances of this equitable case and under the specific provisions of the equitable mechanic's lien act, Havin was not required to obtain service of process upon its cross-claim as to Plez Lewis. *Second,* a real, factual issue was presented here as to whether there was such "unnecessary delay" so as to interrupt the continuity of the suit as to St. Joseph Lead Company. And *third,* under the equitable mechanics' lien sections, appellant St. Joseph also had a duty to join Plez Lewis as a party and cannot complain of Havin's failure in this regard.

*First, the question of service on Havin's cross-claim.* It must be recognized that an equitable mechanic's lien suit is something quite different from the consolidation of a number of legal mechanic's lien actions into one proceeding. Although the basic mechanic lien act was first adopted in Missouri in 1821, the equitable action was not established until 1911, by the adoption of what are now Secs. 429.270 through 429.340, V.A.M.S., but excluding Sec. 429.-310, the limitations section, which was added in 1913. See, Brasher, History of Mechanics' Lien Statutes, 22 V.A.M.S., p. 267; State ex rel. Erbs v. Oliver, supra, 237 S.W.2d 1. c. 130.

Sec. 429.180, V.A.M.S. (Rule 101.03, V.A.M.R.) provides that: "The pleadings, practice, process and other proceedings in cases arising under sections 429.010 to 429.340 shall be the same as in ordinary civil action and proceedings in circuit

courts, *except as herein otherwise provided.* * * * *" (Emphasis added). However, it is *otherwise provided* in the equitable lien sections which relate to its purpose and enforcement (Sec. 429.270), Parties and Joinder (Sec. 429.280), Limitations (Sec. 429.310), and in certain other respects as well.

■ The separate provisions made in these sections are controlling over the pleading and practice provisions for legal mechanic lien actions and civil suits generally; and cases construing such other provisions do not apply and are not of controlling influence where the special provisions of the equitable mechanics' lien law govern. Manchester Iron Works, Inc., v. E. L. Wagner Construction Company, 341 Mo. 389, 107 S.W.2d 89, 93. Specific equitable provisions and case applications will be considered hereafter. The distinction in the application of equitable as opposed to legal liens was also expressly noted in the case of Wiles-Chipman Lumber Company v. Pieper, Mo.App., 176 S.W.2d 50, 53.

As noted, Sec. 429.170, V.A.M.S., requires that a mechanic's lien action shall be commenced within six months after the filing of the lien. The manner of "commencing suit" is provided for in Civil Rule 53.01, V.A.M.R., which states: " * * * The filing of a petition *and* suing out of process therein shall be deemed the commencement of a civil action." (Emphasis added). However, a completely separate provision is made in the equitable mechanic's lien suits as to cross-claimants by Sec. 429.310, V.A.M.S. (Civil Rule 101.15, V.A. M.R.). It is there provided that: " * * * Any answer, or other pleading * * * filed or made in any such equitable action by any mechanic's lien claimant, within six months after the preliminary statement for the lien of such claimant has been filed * * * shall be deemed a commencement of an action by such mechanic's lien claimant." This section constitutes the limitation statute for cross-claimants in equitable mechanic's lien actions and it expressly omits the requirement for "suing out of process".

■ The basis of the provision is clearly in its equitable nature. When a court of equity acquires jurisdiction of a case it may dispose of all issues therein involved, Smith v. Mitchell, Mo., 394 S.W. 2d 308, 309, make full and complete adjustment of the rights of all parties, Jaycox v. Brune, Mo., 434 S.W.2d 539, 542, 543, and retain jurisdiction for all purposes connected with the controversy. American Pamcor, Inc., v. Klote, Mo.App., 438 S.W.2d 287, 291. It must be recalled that the petition of plaintiff Peerless Supply Company joined the owner, the general contractor and all lien claimants, including Havin. That petition stated all the elements required to establish Havin's claim against Plez Lewis and his lien in the amount of over $52,000.00 against St. Joseph. The petition prayed that the various rights and interests of *all* the lien claimants be determined and enforced and that the rights of *all* parties be adjudicated and determined. " * * * [T]he rule is that no process is necessary to bring in any party to the original bill, the cross bill being regarded as an adjunct to the original suit, and the whole *together as constituting but one case.* * * *" 30A C.J.S. Equity § 172d, p. 162. Tucker v. St. Louis Life Insurance Company, 63 Mo. 588; Bobb v. Wolff, 54 Mo.App. 515. Havin's cross-bill did not seek new or additional relief against Plez Lewis and St. Joseph Lead Company which had not already been sought in the petition of plaintiff Peerless Supply Company. Thus no additional service would have been required on Plez Lewis as to Havin's cross-claim under Civil Rule 43.01, V.A.M.R., once service had been had on plaintiff's petition upon Plez Lewis if Plez Lewis thereafter remained in default, as in fact it did.

The requirement of process on a cross-claim in an equitable mechanic's lien suit was first considered in the case of Hydraulic Press Brick Company v. Lane, 198 Mo.App. 438, 200 S.W. 306, where it was

held that plaintiff's service by publication was sufficient for the whole case and a cross-claimant was entitled to its benefit without seeking additional service on the cross-claim. The case of Richards Brick Company v. Wright, 231 Mo.App. 946, 82 S.W.2d 274, 278, construed Sec. 429.310 to mean that " * * * a lien claimant commences his own action in time if he is named as a party to the equitable suit, and he pleads or answers * * * within the period of ninety days [now six months] in which he has to commence his own action after the filing of his lien statement * *."

In State ex rel. Erbs v. Oliver, supra, the equitable action was filed prior to the separate filing of the cross-claimant's legal suits. Over one year after the filing of the equitable suit and many months after the expiration of the then limitation period of ninety days, the trial court consolidated the legal and equitable actions. The Supreme Court held that the legal suits and service of process in them were invalid and of no "force and effect". In effect there was never any valid service made upon the cross-bills. The court concluded, however, that the cross-claimants were properly made parties to the equitable action. It was there stated at 237 S.W.2d 1. c. 131: "Therefore, the plain intent of the equitable mechanics' lien act was that all persons who had filed liens should be made parties to any equitable lien action when it was commenced and be served with summons promptly so that there would be no need for them to begin any suit *or do anything to preserve their liens except plead at the proper time in such equitable action."* (Emphasis added).

Another construction of the limitation requirements in equitable mechanics' lien suits was made in the case of Dierks & Sons Lumber Company v. McSorley, Mo. App., 289 S.W.2d 164, where the lien claimant's cross-petition for a lien was filed fourteen months after suit was commenced. In Dierks, the limitation period was also only ninety days. Both the trial court and the Kansas City Court of Appeals found that an earlier answer filed within the limitation period constituted a "commencement of the action" although it asserted no claim for a lien. As applied to this case, it is clear that the first service of summons in Dierks, if any were obtained at all, would have been on the cross-petition over 14 months after the first answer had been filed and far beyond the period of limitations. Also see Maas v. Dreckshage, supra, 244 S.W.2d 1. c. 404, an equitable mechanic's lien action, where the filing of a motion to dismiss by the lien claimant within the then ninety day period of limitations, followed by an answer and cross-petition after the limitation period had expired, was found to be the commencement of the suit so as to allow eventual recovery.

The only case indicating contra to the above is that of Kinnear Manufacturing Company v. Myers, supra, 452 S.W.2d 1. c. 604, where it was stated that since the cross-claimant was asserting " 'new or additional claims for relief * * *' in its cross-claim, it was necessary for it to obtain service of its cross-claim '* * * in the manner provided for service of summons in this code.' Civil Rule 43.01." However, this statement was dictum since in Kinnear service was *never* had on the general contractor, a necessary party to the suit, by the plaintiff or the cross-claimant. The situation may also have been substantially different in Kinnear than here, where the original petition of plaintiff joining Plez Lewis, St. Joseph, Havin and all other lien claimants had alleged Havin's lien and prayed for an adjudication of all claims including Havin's. The opinion in Kinnear did not indicate whether plaintiff's petition had alleged the existence of the cross-claimant's lien or sought general equitable relief.

In this case it is also quite important that Havin had previously filed his separate legal mechanic's lien action. Upon the filing of the equitable action Havin could not proceed with his legal suit under the provisions of Sec. 429.290, which makes the equitable action exclusive of all other rem-

edies, and under the provisions of Sec. 429.300 which provides for the stay of all other pending actions. A somewhat similar situation was posed in State ex rel. Erbs v. Oliver, supra, 237 S.W.2d 1. c. 131, although the cross-claimant's legal suit was commenced after the equitable action and was thus a nullity. " * * * Construing these [equitable] statutes together as one entire plan and scheme for determining the rights of all parties in property * * *." the court held that the cross-claimant's legal petition could in effect be considered a cross-bill in the equitable action and that the cross-claimant could formally be made a party at any time thereafter. The same situation as in State ex rel. Erbs v. Oliver, supra, was present in Manchester Iron Works, Inc. v. E. L. Wagner Construction Company, supra, 107 S.W.2d 1. c. 95. The cross-claimant's legal suit and service to it were void and its petition in the equitable action was filed far beyond the period of limitations. It was there stated: " * * * Since the suits were brought within the ninety-day period, the life of the liens was preserved thereby, and claimants could thereafter be made parties to the equitable action on motion of any party or by direction of the court, at any time before such equitable action was finally determined. * * * " Also see Waters v. Gallemore, Mo.App., 41 S.W.2d 870, where the cross-claimant's legal suit was filed prior to the equitable action, but his answer and cross-claim in the equitable action was delayed far beyond the period of limitations.

■ Upon the foregoing considerations, we hold that in an equitable mechanic's lien action a defendant cross-claimant, upon filing a proper pleading asserting his lien under Sec. 429.310, need not secure additional service of summons against the owner or contracting party unless new or different relief is sought than that requested in the plaintiff's petition which has properly set forth the cross-claimant's lien and sought relief as to all parties.

*Second, the factual issue of delay.* Even though it was not necessary for Havin to obtain service upon Plez Lewis as to its cross-claim in order to stop the running of limitations after its suit had been properly commenced, service was required upon Plez Lewis to give the court jurisdiction over it as a necessary party to the suit. Appellant contends in effect that delay in serving the necessary party could be such as to interrupt the continuity of the suit against St. Joseph and cause a running of the statute of limitations to it.

■ It should be observed that Sec. 429.-310, the limitation section as to cross-claimants in equitable actions, omits the language "and prosecuted without unnecessary delay to final judgment" which is set forth in Sec. 429.170, the general mechanic's lien limitations section. In any event, it is the failure to prosecute a suit in good faith that allows limitations to run after a suit has been commenced. St. Ferdinand Sewer District of St. Louis County v. Turner, Mo.App., 208 S.W.2d 85, 88; Clark v. Kellar, 3 Bush, Ky., 223; Continental Electric Company v. Ebco, supra. There must be "such delay and lack of diligence" to cause a discontinuance of the action. Driscoll v. Konze, supra, 322 S.W.2d 1. c. 828; Continental Electric Company v. Ebco, supra, 375 S.W.2d 1. c. 138. It is seen that Havin did act with reasonable diligence in obtaining service upon the trustees of Plez Lewis after the withdrawal of the plaintiff from the case. It has been held in an equitable mechanic's lien action that "mere delay in itself would not serve to forfeit the claimants' rights. * * * It is only *unnecessary* delay that was prohibited." Fuhler v. Gohman & Levine Construction Company, 346 Mo. 588, 142 S.W.2d 482, 486.

The lengthy recitation of facts set forth in this opinion relative to the proceedings in the case offer substantial support to respondent's position that there was no interruption in the continuity of the suit since there was barely a lapse of 30 days at any time from the beginning of the suit that some action was not being taken by the

parties or by the court. Respondent urges that the case could not have been heard earlier as a result of any additional diligence on his part. He argues that there was no delay that would have prejudiced St. Joseph or caused it to believe the suit to be discontinued or abandoned; but rather that the delay which occurred was required by the complexity of the suit and the necessity of disposing of the various parties and their motions and claims pending before the court.

If the delay in the final determination of this cause was occasioned by other factors, then the delay in serving the trustees of Plez Lewis did not cause any "unnecessary delay" so as to cause an interruption in the continuity of the suit. In this case there were certainly a number of other such factors involved: The multiplicity of parties and issues; St. Joseph's motion to quash Havin's answer and cross-bill filed on December 9, 1965, taken up on February 18, 1966, and ruled on September 6, 1966; the forfeiture of the corporate charters of Plez Lewis and Son, Inc., and of Industrial Plumbing and Heating Company, Inc.; the repeated attempts by plaintiff and Havin to secure service on Plez Lewis; the extension of time for the parties to plead on at least six occasions; the disposition of the claims of the other 22 lien claimants; the fact that St. Joseph's answer to Havin's cross-claim was not made until March 31, 1967, and amended on June 30, 1967; and even the delay between the submission of the issues after trial on September 18, 1967, and the judgment entry on July 17, 1968.

■ The factual issue as to whether the delay in service on Plez Lewis caused an "unnecessary delay" in the case or interrupted its continuity was submitted to the trial court by St. Joseph's answer to Havin's cross-claim and by its motion to dismiss. The learned judge's intimate knowledge of all aspects of the suit allowed him a far more advantageous position to make a judgment in this regard. Unless a clear abuse is shown we are required to defer to his judgment. We must even presume that the trial court ruled correctly in finding against the motion to dismiss because of unnecessary delay. Fuhler v. Gohman & Levine Construction Company, supra, 142 S.W.2d 1. c. 486[13]. Although the periods involved here are substantially longer than have been allowed in some of the cited cases there are marked differences in the factual situations as well as in the nature of the suits. In fact, in all of appellant's cited mechanic lien cases the action of the trial court was affirmed.

■ None the less, appellant further urges that the rule requiring deference to the trial court's findings does not apply here because the determinative facts are established by the record, and oral testimony need not be weighed. It is true that the rule of deference to the findings of the trial court does not apply generally where the record consists of the pleadings and documentary evidence. Gruenewaelder v. Wintermann, Mo., 360 S.W.2d 678, 686; Morris v. Retz, Mo.App., 413 S.W.2d 544, 546. However, although there is no dispute as to the facts in this case relating to pleading or process, the real factual issue presented relates rather to the diligence and good faith of the respondent. There are many factors dehors the record relating to this factual issue which would have been obvious to the trial judge, but cannot be conceived from the record. As to this issue the rule of deference does apply.

*Third, the duty upon all parties to an equitable mechanic's lien action to obtain joinder.* This is another distinction as to equitable mechanic's lien actions. Sec. 429.-280 provides: "All persons claiming any lien * * * and all persons having any rights in or against and all owners * * * *shall* be made parties to said action * * * but if they do not join as plaintiffs, then they *shall* be made defendants. * * * If * * * any person whose rights are disclosed by the record is omitted as a party, he may thereafter be made party to said action either upon his own application or upon the application of any other party to

said action or by the court of its own motion. * * * " (Emphasis added). This section was construed in State ex rel. Erbs v. Oliver, supra, 237 S.W.2d 1. c. 130, as follows: "Thus it is clear that all persons who have any interest in the property shown by proper public records are necessary parties and it is the duty of the plaintiffs, *and of all parties,* to bring them in; even the Court has the duty to see they are made parties and may bring them in of its own motion * * * " (Emphasis added).

Sec. 429.300 which provides for the stay of previous legal mechanic lien actions also provides that: " * * * the parties in any such other suit *shall* be made parties to such equitable action * * * [and] the rights of all persons *shall* be adjusted, adjudicated and enforced in such equitable suit." (Emphasis added).

Although not noted in the State ex rel. Erbs v. Oliver case, supra, Sec. 429.340 also deals with the joinder of parties and the duty devolved for bringing them into the case. This section specifies: " * * * And the court shall have full power and jurisdiction to speed said action and require service of process to be obtained speedily upon all parties therein *at the instance of any party either plaintiff or defendant in said action or of its own motion.*" (Emphasis added). Construction of this section was first made in the case of Hydraulic Press Brick Company v. Lane, supra, where appellant urged a fatal lack of diligence in the prosecution of the action. Referring to Sec. 429.340, the court found that no application had been made to the court for the purpose of speeding the action and that the appellant had itself asked for additional time in which to plead. Under those circumstances the court stated at 200 S.W. 1. c. 312: "We see in this no delay which could be charged as unreasonable or with which the plaintiff or the St. Louis Lumber Company [the cross-claimant] are responsible."

Sec. 429.340 was also construed in Fuhler v. Gohman & Levine Construction Company, supra, 142 S.W.2d 1. c. 486. This was an equitable mechanic's lien case where the final judgment was entered almost ten years after suit was instituted. The court found procrastination by all parties but no proof of unnecessary delay on the part of respondent cross-claimant. The court stated: " * * * While the duty to prosecute a suit with diligence rests upon the party who institutes it, yet the appellant as defendant made no move to hasten the movement of the case as it may have done under the law or under the specific provision of the statute. Sec. 3184, RS 1929 [now Sec. 429.340] declares that the court may speed the action on its own motion or at the instance of *either* party. This section should be read together with the other section. * * * " (Referring to Sec. 3172, RS1929, now Sec. 429.170).

As seen from the statutes and cases above, St. Joseph also had a duty in this equitable action to see that Plez Lewis was properly joined as a party. On consideration of the same situation in the case of State ex rel. Erbs v. Oliver, supra, Judge Hyde aptly noted at 131 of 237 S.W. 2d, that: " * * * Parties cannot be permitted to thus gain by their own violation of a statutory requirement, especially in equity, whether it was wilfully done or caused by their neglect. * * * "

Appellant also cites Bruun v. Katz Drug Company, 359 Mo. 334, 221 S.W.2d 717 for the proposition that the statutory trustees of Plez Lewis were new parties and that the action was barred as to them since the period of limitations expired after the commencement of the action and before the trustees were actually brought into the case. In Bruun service had been originally obtained on the corporate defendant. However, after its charter forfeiture a 17 year delay occurred before an attempt was made to substitute the statutory trustees. Under those circumstances the statute of limitations would have run against either the original corporate defendant or trustees under the rule in Continental Electric v. Ebco, supra, and Driscoll v. Konze, supra.

More importantly, the abatement and survival statutes construed in the Bruun case, supra, Secs. 1042 through 1047, RSMo 1939, were later repealed and replaced by what is now Sec. 507.100, V.A.M.S. (Civil Rule 52.12) with the addition of subsection 507.-100.4 relating to the survival of actions against corporations. See Murray v. United Zinc Smelting Corp., Mo., 263 S.W.2d 351, 356[7]. Under the facts in Bruun and the present law, substitution of the trustees as parties would not have been required and thus limitations would not have run against the trustees unless it also ran against the original corporate defendant. Sec. 429.280 (Civil Rule 101.12) also provides for substitution of parties in an equitable mechanic lien action without formal revivor of said action. In this case a motion ordering the substitution of the last directors and officers of Plez Lewis as statutory trustees was sustained on the same date that the summons of January 19, 1966, was quashed. As stated in Dierks & Sons Lumber Company v. McSorley, supra, 289 S.W.2d 1. c. 169: " * * * Great liberty is extended to the amendments of petitions to enforce mechanic's liens, which, when made, relate back to the original petition filed."

Appellant cites Quigley v. William M. Rideout & Company, Mo.App., 127 S.W.2d 37, which also involved a mechanic's lien action against a corporation whose charter had been forfeited. However, in that case the charter forfeiture occurred prior to the commencement of the action rather than after the action was commenced as in the instant case. The repealed abatement and survival statutes relied on in the Bruun case were also in effect when Quigley was decided.

■ It can also be observed without greater discussion that Arthur Lewis was a director and president of Plez Lewis; that upon its charter forfeiture he became a statutory trustee who was "jointly and severally responsible to the creditors" as provided in Sec. 351.525, V.A.M.S., that service of summons was made on him on January 28, 1966. Although the trial court quashed that summons, in this equitable case we review the whole record, make our own findings of fact, and make our own conclusions of law. Maas v. Dreckshage, supra. Since no issue was raised here as to the validity of that summons and it is not necessary to do so to make a determination, we will not examine it further except to note that where there is joint and several liability the injured person may sue all defendants jointly or either separately, Manson v. Wabash Railroad Company, Mo., (banc) 338 S.W.2d 54, 57; and that a summons served upon the right party by a wrong name is well served. Marsala v. Gentry, Mo.App., 232 S.W. 1046; State ex rel. Sullivan v. Cross, Mo., (banc) 314 S.W.2d 889.

Upon the foregoing considerations we find for the respondent and against appellant's first contention of error.

St. Joseph's second point is that Havin is estopped to the extent of at least $40,-874.44 to assert his claim for a lien against appellant's property. This figure was the amount due and unpaid on Havin's account against Plez Lewis as of November 15, 1964. By his letter of December 15, 1964, Havin advised Plez Lewis that its account was "relatively current". St. Joseph urges that this was a representation that Havin's account was paid up to November 15, or 30 days before the letter. St. Joseph states that the letter was misleading and deceptive and that in reliance upon it, St. Joseph released large sums of money to Plez Lewis including $19,710.00 representing invoices rendered by Havin.

■ "Equitable estoppel" or "estoppel in pais" is that condition in which justice forbids that one speak the truth in his own behalf. It stands simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another. Brooks v. Cooksey, Mo., 427 S.W. 2d 498. To constitute estoppel in pais,

three things must occur: first, an admission, statement or act inconsistent with a claim afterwards asserted and sued upon; second, action by the other party on the faith of such admission, statement or act; and third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. Emery v. Brown Shoe Company, Mo., 287 S.W.2d 761, 767 [2, 3]; State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Company (banc), 331 Mo. 337, 53 S.W.2d 394, 399 [9–11]; 31 C.J.S. Estoppel § 67, p. 405; White v. Smith, Mo.App., 440 S.W.2d 497, 503.

▮▮▮ Estoppel is an affirmative defense under the provisions of Civil Rule 55.10, V.A.M.R., and the burden of proof is upon the party asserting it. Medical West Building Corporation v. E. L. Zoernig & Company, Mo., 414 S.W.2d 287; Emery v. Brown Shoe Company, supra; Kitchen v. McCullough, Mo.App., 428 S.W.2d 907. Every fact essential to create it must be established by clear and satisfactory evidence. Kind v. Staton, Mo.App., 409 S.W.2d 253. The doctrine " * * * should be applied with great care and caution in each case, and only when all elements constituting an estoppel clearly appear. * * * ", 31 C.J.S. Estoppel § 63, p. 394; Kind v. Staton, supra. Equitable estoppel cannot arise unless justice to the rights of others demands it. Caraveo v. Dumas-Milner Chevrolet Corporation, Mo. App., 377 S.W.2d 482.

In support of its position St. Joseph asserts that a lien claimant may be estopped to assert a lien against an owner's property: where he has advised the owner that the bill was paid and the owner would be safe in paying the contractor, D. T. Norton Lumber Company v. Driving Park Association, 64 Mo.App. 377; where he has given the contractor a letter showing a positive credit to the owner on his account, Julius Seidel Lumber Company v. Weaver, Mo.App., 184 S.W. 484; or where he has given the contractor a receipt showing payment in full, Cote Brilliant Pressed

Brick Company v. Sadring, 68 Mo.App. 15. In all these cases cited by appellant there was evidence that the owner did make additional payments to the contractor in reliance upon the representations made by the lien claimant.

However, we recognize that " * * * an equitable estoppel rests upon the facts and circumstances of the particular case in which it is urged, considered in the framework of the elements, requisites, and grounds of equitable estoppel * * * ", Medical West Building Corporation v. E. L. Zoernig and Company, supra, 414 S.W. 2d 1. c. 292. In examining the record in the instant case we find that factual issues were presented as to all the elements of an equitable estoppel.

Was the representation that the account of Plez Lewis was "relatively current" inconsistent with the claim now asserted by Havin? Under its contract with Plez Lewis, St. Joseph was entitled to receive lien waivers on each account before payments were made by it to Plez Lewis. Havin had given lien waivers to Plez Lewis on June 17, 1964, and on July 20, 1964. In both those cases the lien waiver showed that the account was almost four months behind. On June 17, 1964, the balance due was $49,657.19. On July 20, 1964, the balance due was $30,339.81. Arthur Lewis, president of Plez Lewis, testified that the "normal time" Plez Lewis was behind in payments was four months or "longer or shorter". In its brief St. Joseph set out in chronological order the balances due from Plez Lewis to Havin from September 5, 1963 to March 17, 1965. Excluding the initial statement and duplications the average balance due over this period was in excess of $42,000, with a high balance of over $68,000 and a low balance of over $16,000.

▮▮▮ The term "relatively current" means current considered in relation to something else. Use of the term may have been accurate if the account was current when considered in relation to the history

of the account throughout the preceding fifteen months, or when considered in relation to the status of the account at the time the previous lien waivers were given, or when considered in relation to the financial difficulties which St. Joseph knew that Plez Lewis was having. We note that "The conduct or writing on which reliance is placed must be absolute and unequivocal, and must be certain to every extent, for mere argument, inference or intendment cannot support an estoppel". John Hancock Mutual Life Insurance Company v. Dawson, Mo.App., 278 S.W.2d 57, 61. The mere expression of an opinion cannot support an estoppel. Central States Life Insurance Company v. Bloom, 345 Mo. 982, 137 S.W.2d 517; Biggs v. Modern Woodmen of America, 336 Mo. 879, 82 S.W.2d 898; Hanna v. Nowell, Mo.App., 330 S.W. 2d 595. If the admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel. Noell v. Remmert, 326 Mo. 148, 30 S.W.2d 1009; 31 C.J.S. Estoppel § 77, p. 456.

Did St. Joseph have the right to rely on the statement that the account was relatively current so as to claim an estoppel? It is stated in 31 C.J.S. Estoppel § 71, p. 434–435, that: " * * * [O]ne relying on an estoppel must have exercised such reasonable diligence to acquire knowledge of the real facts as the circumstances of the case require. If he conducts himself with a careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger or loss he cannot invoke the doctrine of estoppel." Biggs v. Modern Woodmen of America, supra; Stottlemyre v. Swearingen, Mo.App., 297 S.W. 1003; Kind v. Staton, supra. Use of the term "relatively current" was itself a flag which should have led to the further inquiry: "Relative to what?" This is particularly true in view of the other circumstances in this case. St. Joseph was aware that Plez Lewis was not always current with its subcontractors and from time to time St. Joseph stopped payment to Plez Lewis because the accounts were not current. St. Joseph was entitled to lien waivers and had notified Plez Lewis that they wanted proof of payment from the various subcontractors before payment would be made to Plez Lewis. The evidence was that St. Joseph did not know the status of the Havin account or how current it was and never made any inquiries in that regard. Where an owner " * * * has knowledge of facts that would put a reasonably prudent person up on inquiry, then the jury, may from those facts, without more, infer that he had knowledge of all facts which such an inquiry would have developed. * * *", Stottlemyre v. Swearingen, supra, 297 S.W. 1. c. 1007; Kind v. Staton, supra. Such an inquiry would, of course, have protected St. Joseph here. "The doctrine of estoppel is for the protection of innocent persons, and only the innocent may invoke it. * *" 31 C.J.S. Estoppel § 75, p. 453.

■ Did St. Joseph actually rely upon this representation and make payments based upon it? The only testimony to this effect was that of Mr. Casteel, St. Joseph's manager in charge of this project, who testified that he considered the letter to mean that the account was paid up to within 30 days of it, and that he relied on the letter and released payments to Plez Lewis upon that reliance. At the very best, of course, Havin could only be estopped to the extent of the $19,710.00 paid by St. Joseph to Plez Lewis on Havin's account after receipt of the letter. Giammarino v. J. W. Caldewey Construction Company, Mo.App., 72 S.W.2d 159. As a matter of fact, following the letter of December 15, St. Joseph did pay Plez Lewis a total sum of $465,665.65 for various invoices received from Plez Lewis for work and materials. It will be noted that the total liens suggested in the petition of the plaintiff Peerless Supply Company were in the approximate amount of $470,000.00. This coincidence and the fact that there was a total of 22 lien claimants clearly indicates that St. Joseph was not requiring

lien waivers or other proof of payment on the accounts of any of the subcontractors prior to making payments to Plez Lewis. Since the other $446,000.00 was paid by St. Joseph after receipt of the letter without reliance on such a meager proof of payment, it is also unlikely that payment on Havin's invoices was made in reliance on that letter, but rather that such payment was also made in disregard of all the factors suggesting a contrary action. This deduction, no matter how obvious, can only be a deduction here; however, the trial court had before it all the information relating to the other lien claims, and was thus more fully advised.

None the less it is not necessary to defer to the trial judge's finding because upon this record we fully and completely agree with his conclusion that no estoppel was formed.

The judgment is affirmed.

SEILER, P. J., and HOLMAN, J., concur.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.