**E. A. POLACK PLUMBING & HEATING CO., INC., et al., Respondents,**

v.

**A. S. A. BUILDERS, INC., et al., Appellants.**

**Nos. 36180, 36166.**

Missouri Court of Appeals, St. Louis District, Division Two.

Jan. 13, 1976.

Motion for Rehearing or Transfer Denied Feb. 26, 1976.

Application to Transfer Denied April 14, 1976.

Stephen N. Limbaugh, Limbaugh, Limbaugh & Russell, Cape Girardeau, for South K Corp.

J. Turner Jones, Jones, Knight & Ford, Columbia, for Cape Pizza, Inc.

Oliver, Oliver & Jones, John L. Oliver, Jr., Cape Girardeau, for respondents.

CLEMENS, Presiding Judge.

Equitable mechanic's lien case arising from building a pizzeria at Cape Girardeau. The trial court granted liens to the seven plaintiff-subcontractors against defendant-owner South K Corp. and defendant-lessee Cape Pizza, Inc. and they appeal.

The appellate issues concern the validity of lien waivers executed by each plaintiff. We find five of those waivers were conditional and affirm the judgment granting liens as to those five plaintiffs. We find two waivers were unconditional and reverse the judgment granting liens as to those two plaintiffs.

The villain of the piece [1] is the defaulting, non-appealing defendant general contractor, A.S.A. Builders, Inc., acting through Chuck Atkins, who contracted to build—and was paid for building—the pizzeria. Atkins had contracted with but did not pay the seven plaintiff-subcontractors.

We relate pertinent circumstances leading up to execution and delivery of plaintiffs' lien waivers. As construction neared completion Mr. Atkins sought his money from Mr. L. C. Blattner, defendant South K's president. A time for closing was agreed on, Mr. Blattner telling Mr. Atkins he would need lien waivers before paying Atkins. Mr. Atkins called in the plaintiff subcontractors to get their lien waivers so he could complete his closing with the owner.

This closing was not to be a cash transaction. Defendant South K's source of money was a bank financing the construction. Mr. Atkins had learned South K was to pay him with a temporarily insufficient funds check. Thus, payment to Atkins depended upon South K Corp. getting the necessary funds from its bank, which it did a few days later. South K's check to Atkins was paid. In short, South K Corp. paid the contractor, Atkins, but Atkins "went south" with the money and plaintiffs wound up holding Atkins' insufficient funds checks. South K relies on plaintiffs' lien waivers to bar their claims to mechanic liens.

We now drop back to consider the lien waivers. Just before closing time, each plaintiff subcontractor brought its bill to Mr. Atkins at the pizzeria. Mr. Atkins gave plaintiffs Polack, Guth, Cotner, Langston and Eastman checks drawn on A.S.A. Builders, Inc., but asked them not to deposit the checks immediately to allow him time to close his deal with the owner and lessee. At Mr. Atkins' request each of the five subcontractors, in exchange for Atkins' check, gave him an executed lien waiver

---

1. "And therefore, since I cannot prove a lover . . . . I am determined to prove a villain!" Shakespeare, *Richard* III I.i.

form. To induce the five subcontractors to give those waivers before they had the cash in hand, on each form Mr. Atkins wrote "issued pending clearance of A.S.A. check."

The closing differed as to two of the plaintiff subcontractors, Edgewater Glass and Pocohontas Lumber. Their representatives merely presented their bills, accepted A.S.A. checks in payment and executed lien waivers bearing no notation of conditional execution.

As soon as Mr. Atkins had delivered the seven checks, he took the lien waivers to Mr. Blattner, telling him he had given checks to the subcontractors and had to have his money to cover the checks. Mr. Blattner had a secretary tally the lien waivers and when he found their total amount exceeded A.S.A.'s bill, he gave Mr. Atkins South K's $14,100 check for final payment of debt to A.S.A. Builders. Mr. Blattner kept the subcontractors' seven lien waivers but denied he had read them.

Different issues arise between the five "conditional" waivers and the two "unconditional" waivers.

■ *The "conditional" waivers.* To defeat these five lien claims, defendants contend the lien waivers effectively barred the subcontractors' recovery since defendants in paying their contractor, A.S.A. Corp., relied on the five lien waivers. This argument ignores the conditional nature of the five waivers; each of these five subcontractors gave the lien waivers to A.S.A. Builders' Mr. Atkins to be surrendered to defendants, but was issued by each to be effective ". . . pending clearance of A.S.A. Builders' check # _____, dated 5–23–72." Ignoring that condition, Mr. Blattner paid A.S.A. Builders as soon as he got the waivers. Mr. Atkins had told Mr. Blattner A.S.A.'s checks were not good when delivered to plaintiffs and Blattner paid A.S.A. its full account without assurance A.S.A. Builders would in turn pay the checks it had given its five subcontractors.

Such a conditional instrument is inadequate to release a mechanic's lien claim. In

*Peerless Supply Company v. Industrial Plumbing and Heating Company,* 460 S.W.2d 651[19, 20] (Mo.1970), the court declared: "The conduct or writing on which reliance is placed must be absolute and unequivocal, and must be certain to every extent, for mere argument, inference or intendment cannot support an estoppel."

Defendants point to Mr. Blattner's testimony that he did not read the notation of the five waivers. It is immaterial that the conditions expressed were on the reverse side of the waivers. *Missouri Pacific Railway Co. v. Levy,* 17 Mo.App. 501, l. c. 505 (1885). Mr. Blattner's excuse is of no consequence. As said in *Woolfolk v. Jack Kennedy Chevrolet Co.,* 296 S.W.2d 511[6] (Mo. App.1956): "It is well settled that one who can read and does not read is foreclosed by his own negligence. 'The law affords to everyone a reasonable protection against fraud in dealing, but it is not an indulgent guardian which can go to the romantic length of giving protection against the consequence of indolence, folly or careless indifference to the ordinary and accessible means of information.'" To the same effect, see *Sanger v. Yellow Cab Company, Inc.,* 486 S.W.2d 477[3] (Mo.1972).

In sum, the five plaintiffs did not waive their rights to mechanic's liens. Since waiver was the only defense to their claims, the trial court did not err in granting those five liens.

■ *The two unconditional waivers.* To defeat the allowed claims of plaintiffs Edgewater Glass and Pocohontas Lumber, who signed unconditional waivers, defendants cite *Giammarino v. J. W. Caldewey Const. Co.,* 72 S.W.2d 159 (Mo.App.1934), followed in *Mid-West Engineering & Construction Co. v. Campagna,* 397 S.W.2d 616[10] (Mo.1965) where the court ruled: "The party executing a lien waiver will not be heard to assert its invalidity as against an owner who has paid out money or otherwise changed his position to his detriment in reliance upon the waiver." Here, Mr.

Blattner did rely on the two unconditional waivers by withholding payment to A.S.A. Builders until he had the lien waivers.

With these two unconditional waivers in hand Mr. Blattner had no reason to expect any further claims by Edgewater Glass or Pocohontas Lumber. By their executed waivers they acknowledged, in effect, that they had been paid, or at least would not look to defendants for payment. Unwisely perhaps, but effectively, they had exchanged their lien claims for A.S.A.'s checks. Relying thereon, South K paid out its money to A.S.A. Builders; thereby defendants were released from mechanic's lien liability to the two subcontractors.

Respondents Edgewater Glass and Pocohontas Lumber seek to avoid the effect of their unconditional waivers by interposing issues of fraud and agency. To charge defendants South K and Cape Pizza with Atkins' fraud in giving plaintiffs worthless checks (§ 561.470, RSMo.), plaintiffs argue that Atkins did so as defendants' agent to obtain lien waivers for defendants. True, Mr. Blattner "requested" Mr. Atkins to get waivers from plaintiffs, but this request was not entirely for the owner's benefit. In effect, Mr. Blattner was telling Mr. Atkins he would pay Atkins when, but not until, Atkins showed Blattner the subcontractors had been paid. There is no evidence that when Mr. Blattner paid Mr. Atkins, Blattner had reason to believe Atkins would not pay his subcontractors just as he had told Blattner he would. The relationship of defendants to A.S.A. Builders throughout the project was that of independent contractor and employer. We do not view the relationship any differently for purposes of this single transaction. No agency existed.

We hold that by their unconditional waivers subcontractors Edgewater Glass and Pocohontas Lumber effectively released defendants from lien liability.

We reverse the judgment as to plaintiffs Edgewater Glass and Pocohontas Lumber insofar as it grants mechanic's liens against defendants South K Corp. and Cape Pizza, Inc. In all other respects the judgment is affirmed. All costs should be taxed 70 per cent against defendants South K Corp. and Cape Pizza and 30 per cent against plaintiffs Edgewater Glass and Pocohontas Lumber. The cause is remanded for entry of a new judgment in accordance with the decisions expressed herein.

Reversed in part and remanded.

KELLY and STEWART, JJ., concur.