**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

v.

**B & E TRUCKING, INC., et al., Defendants.**

No. 85–0742–CV–W–9.

United States District Court,
W.D. Missouri, W.D.

June 19, 1987.

G. Stephen Long, Philip W. Bledsoe, Shughart, Thomson & Kilroy, Kansas City, Mo., for plaintiff.

Thomas J. Walsh, Lee's Summit, Mo., for defendant B & E Trucking, Inc.

Michael E. Reardon, Brian J. Klopfenstein, Kansas City, Mo., for defendants Julie M. & Michelle McMahon.

Michael R. McIntosh, Kansas City, Kan., for defendants Janell & Raymond Wilson.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

On October 4, 1984, defendant Julie McMahon filed a complaint in the Circuit Court of Clay County, Missouri, seeking damages from defendant B & E Trucking, Inc. (B & E) resulting from a collision on May 17, 1984, between an automobile driven by Julie McMahon and a truck operated by B & E. Plaintiff Insurance Company of North America filed an answer on behalf of B & E under a reservation of rights.

On June 28, 1985, plaintiff initiated this action for declaratory judgment seeking an order establishing that a liability insurance policy issued to B & E on July 6, 1982, terminated on July 6, 1983, and, therefore, was not in effect on May 17, 1984. Defendant Julie McMahon counterclaimed seeking a declaratory judgment that plaintiff is required to provide liability coverage to B & E because plaintiff had a Certificate of Insurance on file with the Missouri Public Service Commission (PSC or Commission) on the date of the collision.

Plaintiff has filed a motion for summary judgment. Defendants Julie and Michelle McMahon and defendants Janell and Raymond Wilson have filed separate responses opposing plaintiff's motion.

### Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

█ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

## Undisputed Facts

The following material facts are not disputed by the parties:

1) On July 6, 1980, plaintiff issued Trucker's Policy No. LMT 032238 naming B & E as an insured with an effective policy period of July 6, 1980, through July 6, 1981.

2) On July 16, 1980, plaintiff filed Form E—Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance (Certificate of Insurance) with the PSC certifying that insurance policy No. LMT 032238 had been issued to B & E:

effective from 7/6/80 12:01 A.M. standard time at the address of the insured stated in said policy or policies and continuing until canceled as provided herein, which, by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the State in which the Commission has jurisdiction or regulations promulgated in accordance therewith.

Whenever requested, the [plaintiff] agrees to furnish the Commission a duplicate original of said policy or policies and all endorsements thereon.

This certificate and the endorsement described herein may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the [plaintiff] or the insured giving thirty (30) days' notice in writing to the State Commission, such thirty (30) days' notice to commence to run from the date notice is actually received in the office of the Commission.

3) On July 6, 1981, plaintiff issued Trucker's Policy No. LMT 037787 naming B & E as an insured with an effective policy period of July 6, 1981, through July 6, 1982.

4) On July 6, 1982, plaintiff issued Trucker's Policy No. LMT 037073 (the policy) naming B & E as an insured with an effective policy period of July 6, 1982, through July 6, 1983.

5) B & E did not renew the policy prior to its expiration on July 6, 1983 and did not pay any premiums to plaintiff on the policy after July 6, 1983.

6) B & E obtained insurance commencing on July 6, 1983, from the Early American Insurance Company with an effective policy period of July 6, 1983, through July 6, 1984.

7) On April 30, 1984, the policy issued to B & E by the Early American Insurance Company was cancelled.

8) On April 30, 1984, Guaranty National Insurance Company issued an insurance policy naming B & E as an insured with an effective policy period of April 30, 1984, through April 30, 1985.

9) On May 17, 1984, a collision occurred between a truck operated by B & E and a vehicle operated by defendant Julie McMahon.

10) On May 17, 1984, the Guaranty National Insurance Company policy naming B & E as the insured was in effect.

11) On May 17, 1984, the Certificate of Insurance, filed by plaintiff on July 15, 1980, was still on file with the PSC.

12) Plaintiff had not filed with the PSC Form K—Uniform Notice of Cancellation of Motor Carrier Insurance Policies (Notice of Cancellation) on or before May 17, 1984.

13) On October 4, 1984, Julie McMahon filed in the Circuit Court of Clay County, Missouri, a petition for damages arising from the May 17, 1984, accident, styled *Julie McMahon v. B & E Trucking, Inc.,* No. CV184–2542CC.

14) On January 24, 1985, plaintiff filed an answer on behalf of B & E under a full reservation of rights to prevent entry of a default judgment against B & E.

15) On March 12, 1985, Guaranty National Insurance Company filed a declaratory judgment action against the defendants named herein styled *Guaranty National Insurance Company v. B & E Trucking, Inc., et al,* No. 85–250–CV–W–6. In that action, Guaranty National alleges that B & E did not notify the Baxter-Dunbar Insurance Agency that the truck involved in the May 17, 1984, accident was to be insured under the Guaranty National policy. This case is presently pending in the United States District Court for the Western District of Missouri.

## Discussion

On June 28, 1985, plaintiff filed this declaratory judgment action requesting an order declaring that the policy was voluntarily terminated in July 1983 by B & E and, therefore, was not in effect on the date of the accident. In the alternative, plaintiff seeks an order establishing that the policy does not provide coverage for the May 17, 1984, collision even if the policy's term extended beyond July 1983. In an answer filed on July 18, 1985, defendant Julie McMahon counterclaimed for declaratory judgment alleging that plaintiff is required to provide liability coverage to B & E because the Certificate of Insurance filed with the PSC had never been cancelled.

In its motion for summary judgment, plaintiff contends that it was not required to file a Notice of Cancellation because the policy was not cancelled; it was terminated for nonpayment of the premium. Therefore, plaintiff argues that the policy issued to B & E on July 6, 1982, terminated on July 6, 1983, and was not in effect on the date of the collision.

Defendants Julie and Michelle McMahon respond that a Notice of Cancellation must be filed with the PSC before coverage can be either cancelled or terminated. Otherwise, they assert, the PSC is unable to determine whether a motor carrier is adequately insured. The McMahons argue that because of its failure to file the Notice of Cancellation, plaintiff should be estopped from denying coverage under the policy.

Defendants Janell and Raymond Wilson assert that plaintiff's termination of the policy was a nullity because plaintiff did not file the Notice of Cancellation with the PSC. Therefore, the Wilsons argue that the policy was still in effect on May 17, 1984, the date of the collision.

## Regulatory Scheme

"The Commission is vested with power and authority: (1) To license, supervise and regulate every motor carrier in this state; ... and to supervise and regulate motor

carriers in these and all other matters affecting their relationship with the public[.]" Mo.Rev.Stat. § 390.041. Pursuant to this authority, various regulations have been issued requiring "motor carriers" (defined in § 390.020(17) as including both "common" and "contract" carriers) to have insurance coverage:

Every motor carrier operating motor vehicles in or through the state of Missouri by authority of the Public Service Commission shall at all times have on file with and approved by the Commission a surety bond or a certificate of public liability and property damage insurance which shall show specifically that the required uniform endorsements are attached to such policy covering each motor vehicle in amounts not less than the following amounts:

.    .    .    .    .

(B) Freight vehicles: $100,000 for injury or death of one person; $300,000 for any one accident; $50,000 property damage for any one accident.

4 CSR 240–110.030(1).

The certificate of insurance shall state that the insurer has issued to such motor carrier a policy of insurance which by endorsement provides automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the law of this state. The certificate shall be on Form E, "Uniform Motor Carrier Bodily Injury And Property Damage Liability Certificate Of Insurance." The certificate shall be duly completed and executed by such insurer.

4 CSR 240–110.030(2).

Before any policy of insurance shall be accepted by the Commission the insurance company issuing the policy, or the carrier offering same, shall, upon request of the Commission furnish evidence satisfactory to the Commission that the insurance company issuing the policy is duly authorized to transact business in the state of Missouri, and to issue the policy offered and that it is financially able to meet the obligations thereof.

4 CSR § 240–110.030(8).

An insurer under the provisions of this rule shall give the Commission not less than thirty (30) days notice of the cancellation of motor carrier bodily injury and property damage liability insurance or motor carrier cargo insurance, as the case may be, by filing with the commission the form of notice set forth in Form K–Uniform Notice Of Cancellation Of Motor Carrier Insurance Policies. The notice shall be duly completed and executed by the insurer.

4 CSR 240–110.030(5).

Therefore, Missouri requires that all motor carriers lawfully operating in Missouri by authority of the PSC have liability insurance to protect any member of the public injured in person or property by the motor carrier. The PSC implements this regulation by requiring an insurer of a motor carrier to file a Certificate of Insurance with the PSC in which the insurer states that it has issued insurance to the named motor carrier effective from a certain date *and* that the insurance *will continue* "until canceled as provided herein...." The insurer is not required to state in the Certificate of Insurance an ending date for the insurance issued to the motor carrier. By executing and filing the Certificate of Insurance with the PSC, the insurer promises that the insurance will continue in effect until 30 days notice of cancellation is given to the PSC.

This interpretation of the above quoted regulations and of the Certificate of Insurance form referred to in the regulations is consistent with the regulatory purpose of assuring that motor carriers will be permitted to operate in Missouri only if they are insured. In the event the carrier loses its insurance, the PSC must be afforded 30 days notice of cancellation so as to assure that acceptable replacement insurance is obtained by the carrier.

■ Here, by executing and filing the Certificate of Insurance on behalf of B & E, plaintiff promised the PSC that the policy of insurance covering B & E would

continue in effect until the PSC was given 30 days notice of cancellation. Plaintiff never gave the PSC notice that the policy covering B & E was not continuing. Therefore, plaintiff breached the promise made on behalf of B & E to induce the PSC to grant B & E permission to operate as a motor carrier on Missouri highways.

Plaintiff argues that the regulation and the Certificate of Insurance require 30 days notice to the PSC only in the event of cancellation but not if the policy is terminated or lapsed as the result of B & E's failure to renew.

In Missouri insurance law, "cancellation" and "termination" are not synonymous.

Plaintiff, in its brief, treats the terms "cancellation" and "termination" as synonymous, but they are not. "Cancellation," as used in insurance law, means termination of a policy prior to the expiration of the policy period by act of one or all of the parties; "termination" refers to the expiration of the policy by lapse of the policy period. *Beha v. Breger,* 130 Misc. 235, 223 N.Y.S. 726, 731[7] (1927); *U.S.F. & G. Co. v. Security F. & I. Co.,* 248 S.C. 307, 149 S.E.2d 647, 650[8] (1966). In this case, the policy "terminated" or "expired" by lapse of the policy period. Plaintiff's argument that it did not receive notice of cancellation is therefore wholly without merit. *Waynesville Security Bank v. Stuyvesant Ins. Co.,* 499 S.W.2d 218, 220 (Mo.App. 1973).

Plaintiff's argument about the difference in meaning between "cancellation" and "termination" would be persuasive if the promise it made to the PSC in the Certificate of Insurance had been only to notify the PSC if it canceled the policy. However, as previously discussed, plaintiff promised to do more than that. Plaintiff promised that the policy effective July 6, 1980, would continue "until canceled as provided herein ...," i.e., would continue until 30 days notice of cancellation had been given to the PSC. Therefore, plaintiff's legalistic argument about the different meanings of "cancellation" and "termination" is irrelevant. Plaintiff undertook to provide continuing coverage unless the PSC was given 30 days notice of the cancellation of the required motor carrier endorsements.

■ The question remains whether the individual defendants have a claim against plaintiff due to plaintiff's breach of its promise to the PSC.

Defendants argue that the doctrine of equitable estoppel precludes plaintiff from disclaiming coverage under the policy. The doctrine of equitable estoppel requires a showing of three elements:

[F]irst, an admission, statement or act inconsistent with a claim afterwards asserted and sued upon; second, action by the other party on the faith of such admission, statement or act; and third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act.

*Peerless Supply Co. v. Industrial Plumb. & Heat. Co.,* 460 S.W.2d 651, 666 (Mo. 1970). The doctrine "should be applied with great care and caution in each case, and only when all elements constituting an estoppel clearly appear." *Id.* "Every fact essential to create it must be established by clear and satisfactory evidence." *Id.*

Plaintiff's claim that it was not providing insurance coverage for B & E on the date of the collision is inconsistent with its promise in the Certificate of Insurance to provide coverage until the PSC was given 30 days notice. An argument can be made in light of the regulatory scheme that when the PSC allowed B & E to continue to operate in Missouri, the PSC relied on plaintiff's promise to continue providing coverage to B & E until plaintiff notified the PSC. Since any member of the public injured in person or property by a motor carrier is the intended beneficiary of the PSC's regulatory requirements, the individual defendants may have a claim for relief if they can establish injury as a direct result of allowing plaintiff to cancel the policy without giving the PSC the required notice.

Whether the individual defendants will suffer damage as a result of plaintiff's

failure to honor its promise to the PSC depends on whether, at the time of the collision, B & E had insurance in effect complying with the PSC's regulations. If B & E had an insurance policy with another insurance company at the time of the collision, then the public policy underlying the PSC regulations would be achieved. Therefore, the individual defendants would not be damaged by plaintiff's failure to comply with its promise to the PSC to provide continuing coverage until 30 days notice of cancellation had been given to the PSC.

In any event, based on the record presented, plaintiff's position is not so one-sided that plaintiff must prevail as a matter of law.

For the reasons stated, it is hereby ORDERED that plaintiff's motion for summary judgment is denied.